**TEXAS CITY REFINING, INC., Appellant,**

v.

**CONOCO, INC., Appellee.**

**No. A14–88–016–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 12, 1989.

Rehearing Denied March 3, 1989.

Douglas Chilton, Texas City, Stanley B. Binion, Houston, J. Bruce Bennett, Austin, for appellant.

Daniel M. McClure, Albert R. Lohse, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

MURPHY, Justice.

This is a breach of contract case arising from an agreement for the sale of 400,000 barrels of crude oil. When the cargo arrived late, the buyer refused to accept delivery. The seller filed suit and argued to the jury that a force majeure clause in the contract excused the delay. The jury agreed with this contention and found $5.6 million in damages. We affirm.

Appellant Texas City Refining (TCR) made an agreement with appellee Conoco to buy a quantity of Alaskan North Slope crude. This agreement sprang from a telephone conversation between an employee of appellant and an employee of a company related to Conoco. At this point began a battle of the telex forms, with Conoco negotiating instead of its corporate relative. Eventually appellant and appellee settled on agreeable terms, and delivery was to take place during February 1986. Late in that month the vessel in question left Panama for Texas City Refining. Because it was so heavily laden, the vessel needed to transfer some of its oil to a smaller ship before it could make port at Texas City. High winds in the Gulf of Mexico prevented a timely transfer and the ultimate delivery did not occur until the evening of March 1. By this time the market price of oil had plummeted to less than half the contract price.

## I. VENUE

A threshold question is whether Conoco could bring suit in Harris County. TCR contends Galveston County was the place of contract formation, as well as the place of performance/breach. Although the initial phone call took place between both counties, TCR alleges no contract was created because of a mistake of fact regarding the seller's identity. For reasons that follow, we find the mistake of fact to be immaterial.

Under the general rule, venue is proper in the county in which all or part of the cause of action accrued. TEX.CIV.PRAC. & REM.CODE § 15.001. Accordingly, Conoco may hold venue in Harris County if it can show part of its contract action accrued there. This task involves some complications because article two of the Uniform Commercial Code intentionally avoids specifying precisely when and where a sales contract comes into existence. *See* TEX. BUS. & COMM.CODE § 2.204(b). Conduct can suffice to form an agreement. *Id.* § 2.204(a), 2.207(c); *see* Note, 34 BAYLOR L.REV. 525, 527 n. 9 (1982). Since both parties acknowledge the creation—in some way—of binding contractual obligations, it only remains for us to decide whether sufficient conduct occurred in Harris County.

■ The scope of our review encompasses the entire record. TEX.CIV.PRAC. & REM. CODE § 15.064. Appellate review of the venue determination thus differs in breadth from the decision made by the trial judge, who must rule solely on the basis of certain documents without the benefit of live testimony. TEX.R.CIV.P. 87. This scheme allows something of an anomaly, in that the judge might rule correctly at the pretrial stage only to find later that venue should lie elsewhere. Because of this anomaly, the parties are now in dispute over whether we should apply a preponderance of the evidence standard in reviewing the venue ruling. In our opinion we should, as no other approach makes sense.[1]

■ Applying this procedural standard of review in light of the pertinent substantive law, we hold that venue was proper in Harris County. The battle of the telex forms was fought across the county lines, and there is no good reason to fix on the buyer's forum to the exclusion of the seller's. The UCC does not permit an artificial focus on an arbitrary site. *See* § 2.204 comment; J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE 23 (2d ed. 1980). We overrule points of error 28 and 29.

## II. THE MERITS

TCR also challenges the jury's findings that (1) force majeure caused the delay, (2) the parties did not intend a force majeure event to cancel the sales obligation, and (3) time was not of the essence. As part of their agreement the parties incorporated elements of a standard form used in the industry. This contract (Sohio Common Terms) defined force majeure as follows:

### ARTICLE 10: FORCE MAJEURE

Any delays in or failure of performance by either party, except in respect of the obligation to make payments under this Agreement, shall not constitute default hereunder if and to the extent such delays or failure of performance are caused by occurrence(s) beyond the reasonable control of the party affected, and which by the exercise of due diligence such party is unable to prevent (herein called "Force Majeure"), including but not limited to: acts of God or the public enemy, sabotage, war, mobilization, revolution, civil commotion, riots, strikes, lockouts, fires, accidents or breakdowns, floods, hurricanes or other actions of the elements, restrictions or restraints imposed by law, rule or regulations or other actions of governmental authorities. Quantities affected by any declaration of Force Majeure shall be deleted from supply obligations for the period in question

---

1. This situation resembles the one in which the trial judge denies a motion for directed verdict. Any review of evidentiary sufficiency takes place on the whole record. As to whether we are free to make de novo findings of venue facts, or whether we must defer to the lower court, there is no need to decide. This record supports the venue ruling under either approach.

and need not be made up unless and to the extent otherwise mutually agreed upon by the parties. In any such event, the party claiming Force Majeure shall notify the other party in writing and, if possible, of the extent and duration thereof and shall exercise due diligence to prevent, eliminate or overcome such cause where it is possible to do so and resume performance at the earliest possible date;....

Although both sides have ably briefed the common law meaning of force majeure, the common law definition is merely a gap-filler which must yield to party autonomy. *See* §§ 1.102(c), 2.615 comment 8. Here the parties fashioned the contours of force majeure on their own, and the jury decided which side was in breach.

■ The main cluster of arguments by TCR has to do with the finding of a force majeure event. Among these contentions are claims of foreseeability, due diligence, and sole proximate cause. When such arguments are examined TCR is giving us a reprise of its jury argument. The central legal question before us is the sufficiency of the evidence to support the jury's answer. Because we feel the evidence is sufficient, points of error one through fifteen are overruled.

■ Point of error sixteen says Conoco's declaration of force majeure relieved TCR of its obligation to accept delivery. The jury found otherwise in special issue two, and we agree. Indeed, our reading of the contract leads us to conclude this question need not have gone to the jury at all. Construction of a contract is for the court. Point of error sixteen is overruled.

The seventeenth point of error claims that special issue two should not have been put to the jury because it asked a legal question. Although this proposition is true, reversal is unnecessary in light of our agreement with the judgment below. We overrule point of error seventeen. The eighteenth point of error is a challenge to the sufficiency of the evidence supporting the jury's answer to special issue two. We overrule this complaint for the reasons given above.

■ TCR also raises the question whether time was of the essence. The jury said no. TCR maintains the jury was wrong and should not have been asked anyway, as the trial court ought to have taken judicial notice that time was of the essence. It is unnecessary to decide whether this question properly appeared in the charge, because our conclusion is the same as the jury's. We overrule points of error twenty through twenty-four.

■ The next grouping attacks the finding that a supply obligation persisted beyond any force majeure event. Again we find sufficient evidence to support the finding. Although TCR also assigns error to the pertinent part of the charge, as submitting a legal question and misstating the parol evidence rule, we discern no harm. TEX.R.APP.P. 81(b). Points of error twenty-five and twenty-six are overruled.

■ The trial court allowed certain testimony about custom and trade usage, and TCR contests these rulings. We find the rulings proper under § 2.202. Point of error twenty seven is overruled. Similarly, the court did not err in refusing TCR's requested instruction on course of dealing. We overruled point of error nineteen.

Finally we must decide the appropriate rate of prejudgment interest. The supreme court has left no alternative but to award 10%. *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929 (Tex.1988). We overrule point of error thirty.

The judgment is affirmed.