**Doak C. PROCTER, III, Appellant,**

v.

**FOXMEYER DRUG COMPANY, Appellee.**

**No. 05–93–00470–CV.**

Court of Appeals of Texas, Dallas.

Aug. 31, 1994.

Terry W. Wood, Beaumont, James Stanton, Dallas, for appellant.

Jeffrey S. Levinger, Daniel J. Smith and Mike Birrer, Dallas, for appellee.

Before LAGARDE, CHAPMAN and MORRIS, JJ.

## OPINION

LAGARDE, Justice.

This case presents the issue of whether a corporation, unhappy with an obligation that it voluntarily assumed by an agreement it drafted, may avoid that obligation under the public policy preventing unreasonable restraints on alienation of property. We conclude that it may.

Doak C. Procter, III appeals from a summary judgment declaring that his contractual option to purchase real property from appel-lee Foxmeyer Drug Company is an unreasonable restraint on alienation. In four points of error, Procter complains that (i) as a matter of law the option is not an unreasonable restraint on alienation, (ii) a material question of fact exists regarding his breach of option counterclaim, (iii) a material question of fact exists regarding his fraud counterclaim, and (iv) venue was improper. We affirm.

## FACTS

Appellant was a shareholder and president of Procter Company, the parent company of Jefferson Drug Company ("Jefferson"). Appellee was the parent company of Beaumont Division, Inc. On January 31, 1986, Procter Company, its shareholders (including appellant), and appellee entered into a merger agreement ("agreement") through which appellee acquired Jefferson from Procter Company and simultaneously merged Jefferson with Beaumont Division, Inc. The acquisition price was Jefferson's adjusted December 31, 1985 book value plus almost $3 million dollars. The only real estate Jefferson owned was a warehouse facility located in Beaumont, Texas ("warehouse").

The warehouse and two provisions of the agreement are the subject of this litigation. Paragraph 6.9 of the agreement states as follows:

*Warehouse Facilities.* In the event the Surviving Corporation ceases to utilize the warehouse facilities used by Jefferson in conducting its business in Beaumont, Texas, [appellant] shall have the option to purchase from the Surviving Corporation, during the 30–day period following the termination of such use, the warehouse facility (including all fixtures not removed by the Surviving Corporation before the end of the 30–day period) of the Surviving Corporation for a purchase price equal to the book value as set forth on the Final Balance Sheet of such facility and fixtures. Such purchase shall be made without any representations or warranties by the Surviving Corporation and without recourse to the Surviving Corporation.

The agreement defined the Surviving Corporation as the entity resulting from the merg-

er of Jefferson and Beaumont Division, Inc. The undisputed book value of the warehouse on the final December 31, 1985 balance sheet was $79,955.38.

Paragraph 10.7 of the agreement states as follows:

> *Benefits of Agreement.* All terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Anything contained herein to the contrary notwithstanding, this Agreement shall not be assignable by either party [sic] hereto without the consent of the other party [sic] hereto.

In May 1987, the Surviving Corporation merged with appellee.

The appraised market value of a fee-simple-absolute interest in the warehouse was $500,000 as of May 3, 1991. On March 10, 1992, appellant notified appellee that he had become aware that appellee had ceased using the warehouse. Complying with the terms of Paragraph [1] 6.9, on March 25, appellant tendered to appellee a cashier's check in the amount of $79,955.38. Appellee refused to accept the tender. The parties agree that the market value of the warehouse on March 25, 1992 was approximately $550,000.

Appellee filed this suit on March 23 seeking a declaratory judgment that the option created in Paragraph 6.9 was an unreasonable restraint on alienation.[2] The trial court denied appellant's motion to transfer venue to Jefferson County, Texas. Appellant also filed a general denial and counterclaims for breach of contract, fraud, and negligent failure to maintain the warehouse; appellant sought specific performance and monetary damages. Neither party pleaded ambiguity.

The trial court granted appellee's motion for summary judgment, expressly stating:

> [Paragraph] 6.9 of the Merger Agreement, which concerns an option unlimited in duration in light of [Paragraph] 10.7 of the Merger Agreement, is unenforceable and

---

1. References to "Paragraph" refer to a paragraph in the agreement unless otherwise noted.

2. Although courts generally have tested the legality of options by the rule against perpetuities, commercial transactions might be better ana-

void as an unreasonable restraint on alienation. . . .

Further, the trial court ordered that appellant take nothing on his counterclaims.

## STANDARD OF REVIEW

■ The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

■ When the plaintiff moves for summary judgment, it must conclusively establish each essential element of its cause of action as a matter of law. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986) (per curiam). A matter is conclusively established if ordinary minds cannot differ with

---

lyzed under the restraint on alienation doctrine. *Mattern v. Herzog,* 367 S.W.2d 312, 319–20 (Tex. 1963). Because neither party has argued the rule against perpetuities, we do not address it.

respect to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). Summary judgment · is proper in cases involving the construction of a written instrument when the instrument is determined to be unambiguous. *See Preston Ridge Fin. Servs. v. Tyler,* 796 S.W.2d 772, 775 (Tex.App.—Dallas 1990, writ denied).

## UNREASONABLE RESTRAINT ON ALIENATION

Although apparently disputed in the trial court, on appeal both parties have presumed that the Donative Transfers provisions of the Restatement (Second) of Property (1981) are relevant. Accordingly, both parties advance arguments relying on the Restatement. Our initial determination, therefore, concerns the Restatement's applicability to a case arising from a commercial, or *non*donative, transaction.

As its name implies, the Restatement expressly applies *only* to *donative* property transactions:

> This part of the [Restatement (Second)] is concerned with donative transfers of property. Hence, it *excludes any treatment of commercial transactions* in property, even though some of the property problems dealt with herein may arise in a commercial context as well as in a donative one.

RESTATEMENT (SECOND) OF PROPERTY (DONATIVE TRANSFERS), Introduction, p. 1 (1981) (emphasis added). It is undisputed that the agreement creating appellant's option arose from an arm's length commercial transaction, not a donative transfer. Nevertheless, the parties cited several cases applying the Restatement's provisions regarding restraints on alienation to commercial transactions. *See, e.g., Randolph v. Terrell,* 768 S.W.2d 736, 739 (Tex.App.–Tyler 1987, writ denied) (adopting the Restatement although *presuming* that the deed containing the option in question was executed and delivered as a result of an arm's length commercial transaction).

In another section, the Restatement *encourages* its applicability to commercial transactions, but only under certain circumstances:

> Although the primary focus of this [subpart of the Restatement (Second)] is on restraints on alienation in donative transactions, the rules developed in this [subpart], to the extent that they *permit* restraints on alienation, are equally *permissive* in regard to non-donative transfers.

RESTATEMENT (SECOND) OF PROPERTY (DONATIVE TRANSFERS) Pt. II, intr. note (1981) (emphasis added). In other words, if an alleged restraint on alienation is valid under the Restatement provisions, it is valid whether the transaction is donative or nondonative. The important implication of the quoted passages, however, is that the Restatement was not intended to address *unreasonable* commercial restraints on alienation. That is, an alleged restraint on alienation could be *invalid* in a donative context, but nevertheless be *valid* in a nondonative context.

■ The reason for this incongruous treatment stems from the core difference between donative and nondonative transactions. In donative transactions, the grantor unilaterally conveys the property under terms of his or her choosing without the need for any consent from the grantee. In commercial transactions, the grantor and grantee negotiate terms that ultimately are satisfactory to both. It has been stated that "the policy of freedom of alienation prevents the conveyor from qualifying his conveyee's power to convey freely in the future." RESTATEMENT (FIRST) OF PROPERTY, Pt. II, intr. note (1944). However, public policy should be more lenient when the conveyee consents, through the freedom of contract, to limit his own power to convey in the future as long as the public interest is not harmed. *See Mattern v. Herzog,* 367 S.W.2d 312, 320 (Tex.1963).

■ We conclude that the Restatement expressly limits its applicability in evaluating restraints on alienation. We hold that the provisions in the Restatement (Second) of Property (Donative Transfers) (1981) can conclusively . determine the validity—but not the invalidity—of restraints on alienation resulting from nondonative transactions. This approach is consistent with that taken by the only other Texas court to address the adop-

tion of the Restatement. *See Randolph,* 768 S.W.2d at 739 (concluding that an option was reasonable by adopting and applying section 4.2(3) of the Restatement "in this case").

In his first point of error, appellant asserts that the option created by Paragraph 6.9 is not an unreasonable restraint on alienation as a matter of law. Appellant analogizes his option to a right of first refusal. Appellant points out that a right of first refusal is a preemptive right which requires a property owner to first offer the property to the person holding the right at the stipulated price and terms in the event the owner decides to sell. *See Riley v. Campeau Homes (Tex.), Inc.,* 808 S.W.2d 184, 187 (Tex.App.–Houston [14th Dist.] 1991, writ dism'd by agr.). Appellant argues that the unilateral decision of appellee to cease utilizing the warehouse is similar to a decision to sell in the right-of-first-refusal context. In both situations, the option or right holder cannot force the property owner into action. The initial decision to dispose of the property or discontinue its use is made unilaterally by the owner.

Appellant's argument continues by relying on Section 4.4 of the Restatement,[3] which provides that a right of first refusal is *not a restraint on alienation* if the terms of the right are reasonable regarding both the price to be paid and the time allowed for exercise of the right.[4] *See Randolph,* 768 S.W.2d at 738 (adopting Section 4.4). Appellant asserts that both the price and time period are reasonable. First, the $79,955.38 option price coincides with the book value of the warehouse at the time of appellee's purchase. Consequently, appellant asserts that the option price is the same price appellee paid Procter Company for the warehouse in 1986 and, as such, appellee cannot now claim the price is unreasonable. Second, appellant argues that the 30–day period to exercise the option is reasonable.

■■■ Appellant's argument fails for several reasons. First, the option created by

Paragraph 6.9 is *not* analogous to a right of first refusal. In Texas, a right of first refusal requires the property owner to provide the holder of the right "the opportunity to buy the burdened property *on the terms offered by a bona fide purchaser.*" *Riley,* 808 S.W.2d at 187 (emphasis added). The holder of the right cannot fix the price because the price is determinable only when a willing seller receives an acceptable offer from a bona fide purchaser. *Forderhause v. Cherokee Water Co.,* 623 S.W.2d 435, 439 (Tex.Civ. App.–Texarkana 1981), *rev'd on other grounds,* 641 S.W.2d 522 (Tex.1982). Thus, appellant's one-price option is much *more* than a right of first refusal. We conclude that the Restatement's provisions regarding a right of first refusal are inapplicable to the option before us.

■■■ Nevertheless, assuming, *arguendo,* that the option is analogous to a right of first refusal, appellant's reliance on Section 4.4 is misplaced. Appellant attempts to establish the reasonableness of the $79,955.38 option price by equating it to the price appellee paid for the warehouse. The agreement, however, does not refer to specific prices paid for specific *assets* of Jefferson. The agreement was a negotiated purchase of Jefferson's *equity.* There is no basis under the terms of the agreement to allocate the total purchase price of Jefferson *stock* to each of Jefferson's assets that appellee acquired, including the warehouse.

We conclude that $79,955.38 is unreasonable as a matter of law to pay for real estate valued at approximately $550,000. Procter's price does not satisfy the reasonable price requirement under Section 4.4.

Appellant also asserts that summary judgment was improper because appellee failed to conclusively establish that the option was an unreasonable restraint on alienation. In its summary judgment motion, appellee asserted that Section 4.2(3) establishes the unreasonableness of the restraint.[5] On appeal, appel-

---

3. RESTATEMENT (SECOND) OF PROPERTY (DONATIVE TRANSFERS) § 4.4 (1981). Future references to "Section" refer to this version of the Restatement unless otherwise noted.

4. In addressing this argument, we assume, without deciding, that Section 4.4 is the law in Texas.

5. Section 4.2(3) lists six factors courts should use to evaluate whether a forfeiture restraint on alienation is reasonable:

lee argues this same theory. As noted above, however, the Restatement is inapplicable for that purpose because it does not consider factors unique to nondonative transactions. Nevertheless, our initial holding is not fatal to appellee's position.

Appellee also relied on several cases that did not apply the Restatement, including one Texas case. *See Gray v. Vandver,* 623 S.W.2d 172 (Tex.App.–Beaumont 1981, no writ). Specifically, appellee argued that it conclusively established that the option (1) price was fixed, (2) period was unlimited in duration, and (3) operated to restrain alienation. On appeal, appellee continues to assert that these facts establish the option as unreasonable as a matter of law. *See id.* at 175. Without reference to the Restatement, the trial court's judgment stated that appellant's option was unlimited in duration. We conclude that the trial court decided the case based on appellee's arguments, not on the Restatement.

We must now determine the correctness of the trial court's decision based on appellee's arguments.

### Fixed Price

It is undisputed that the option price is fixed by the option provision itself. We conclude that the unambiguous language of the agreement and appellee's summary judgment evidence conclusively established the option price as fixed at $79,955.38.

### Unlimited in Duration

Appellee asserts that the option provision in Paragraph 6.9, when read in conjunction

a. The restraint is limited in duration;
b. The restraint is limited to allow a substantial variety of types of transfers to be employed;
c. The restraint is limited as to the number of persons to whom transfer is prohibited;
d. The restraint is such that it tends to increase the value of the property involved;
e. The restraint is imposed upon an interest that is not otherwise readily marketable; or
f. The restraint is imposed upon property that is not readily marketable.
RESTATEMENT (SECOND) OF PROPERTY § 4.2(3) (1981).

6. Indeed, for appellant even to exercise his option, paragraph 10.7 must be construed as part

with Paragraph 10.7, is unlimited in duration. Appellant points out that the option is contained only in Paragraph 6.9. Relying on *Mattern,* 367 S.W.2d at 319, appellant argues that we should not construe the option as unlimited in duration because the option *itself* does not compel such· a construction.

When a written instrument is unambiguous, it is the responsibility of the court to give effect to the intent of the parties as expressed therein. *See Dallas Bank & Trust Co. v. Frigiking, Inc.,* 692 S.W.2d 163, 166 (Tex.App.–Dallas 1985, writ ref'd n.r.e.). It is the objective, not subjective, intent of the parties that controls. *See id.*

Paragraph 6.9 grants a conditional purchase option to appellant and obligates the Surviving Corporation to perform when that condition occurs. Paragraph 10.7 explicitly states that "[a]ll terms and provisions of this [a]greement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns." Clearly, the words of Paragraph 10.7 make no exception for the rights and obligations contained in Paragraph 6.9 but expressly apply to *all* rights and obligations in the agreement. Thus, the objective intent of the parties as expressed through Paragraph 10.7 was (1) to grant the benefits of the option to appellant's potential successors and assignees and (2) to bind any successors and assignees of the Surviving Corporation to perform under the option.[6] Thus, the option was not appellant's personal right, but was a right inuring to the benefit of his successors or assigns.

of the option. Paragraph 6.9 expressly grants appellant the option to purchase the warehouse within 30 days after *the Surviving Corporation* ceases to utilize it. The summary judgment evidence is undisputed that the Surviving Corporation ceased to exist in May 1987. The Surviving Corporation, as a matter of law (and common sense), must have ceased to utilize the warehouse no later than when it ceased to exist. Yet, appellant did not attempt to exercise his option until May 1992; and, then, only against appellee, the successor to the Surviving Corporation. Thus, unless appellee is bound to the express terms of the option *by paragraph 10.7,* appellant's option expired in 1987.

The exact meaning of the word "successor" when used in a contract depends largely on the kind and character of the contract, its purposes and circumstances, and the context. *Thompson v. North Tex. Nat'l Bank*, 37 S.W.2d 735, 739 (Tex.Comm'n.App. 1931, holding approved). "Successor" does not ordinarily mean an assignee, but is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized legal succession. *Enchanted Estates Community Ass'n, Inc. v. Timberlake Improvement Dist.*, 832 S.W.2d 800, 803 (Tex.App.–Houston [1st Dist.] 1992, no writ).

In our view, "successor" as used in the agreement before us intended the meaning just recited as applied to the *corporate* parties to the agreement. However, we have found no Texas contract case applying the term "successor" to an individual. In *dictum*, one Texas court has stated, "[I]n respect to natural persons, [the word 'successor'] is [an] apt and appropriate term to designate one to whom property descends or [the] estate of the decedent." *International Ass'n of Machinists v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 781 (Tex.Civ.App.–Houston 1959, no writ) (citing *In re Murray Realty Co*, 35 F.Supp. 417, 419 (N.D.N.Y. 1940) (citing New York law)). Based on the kind and character of the contract before us, its purposes and circumstances, and its context, we conclude that the term "successor" was also intended to apply to the *natural-person* parties of the agreement, including appellant.

We further conclude that the term "successor" was intended to designate those to whom property descended through a deceased natural-person party to this agreement. The option in Paragraph 6.9, therefore, extends perpetually to appellant's descendants and is unlimited in duration.

### Restraint on Alienation

Finally, appellee asserts that if it "attempts to lease, sell, assign, or otherwise transfer the warehouse to a bona fide purchaser, [appellee] will have ceased to utilize the warehouse in conducting its business and [appellant] can try to compel its sale to him...." Appellant challenges appellee's assertion because "Paragraph 6.9 does not prohibit transfer to anyone."

Prohibited restraints have traditionally been classified as disabling, promissory, or forfeiture restraints. *Mattern*, 367 S.W.2d at 319. These are restraints that either void, impose contractual liability, or subject to termination a grantee's interest in land because of a later attempted *conveyance. Id.* at 319 n. 4 (quoting RESTATEMENT (FIRST) OF PROPERTY § 404 (1944)); *see also* RESTATEMENT (SECOND) OF PROPERTY §§ 3.1–3.3 (1981). Options, however, can operate as indirect restraints on alienation even though they do not fit into the usual classifications. *See Mattern*, 367 S.W.2d at 319.

The option provision in Paragraph 6.9 of the agreement is such an alienation restraint.

> In the event the Surviving Corporation ceases to utilize the warehouse facilities used by Jefferson in conducting its business in Beaumont, Texas, [appellant] shall have the option to purchase from the Surviving Corporation....

Although alienation is not expressly prohibited, the unambiguous intent of the quoted provision was to limit the use of the warehouse to the Surviving Corporation. Thus, utilization by anyone else would trigger the option and, if exercised, subject the Surviving Corporation to either (1) termination of its interest in the warehouse for the fixed price or (2) liability for breaching the option. We conclude that although drafted as a restraint on use, Paragraph 6.9 operates indirectly as a restraint on alienation. *Cf.* RESTATEMENT (SECOND) OF PROPERTY (DONATIVE TRANSFERS) § 3.4, cmt. b (1981).

### *Unreasonableness as a Matter of Law*

Our supreme court has written only rarely on restraints on alienation—and rarer still in such cases involving options. In *Mattern*, however, the supreme court established two guidelines for analyzing options. First, an important factor in analyzing an alienation-restraining option is the reason-

ableness of the option's time limit. *Mattern,* 367 S.W.2d at 320. Second, a court should not void an option—and, thus, circumvent the parties' freedom of contract—unless the option bears some relationship to the harm the policy against undesirable restraints on alienation was designed to prevent. *Id.*

■ The rule preventing unreasonable restraints on alienation rests on the assumption that social welfare requires prohibiting restrictions on property alienation. RESTATEMENT (FIRST) OF PROPERTY, Pt. I, intr. note (1944). The rule serves at least three purposes [7] that support this assumption:

(1) Balances the current property owner's desire to prolong control over his property and a latter owner's desire to be free from the "dead" hand;

(2) Contributes to better utilization of society's wealth by reducing fear from uncertain investments and assisting in assets flowing to those who would put them to their best use; and

(3) Keeps the property available to satisfy the current exigencies of the owner and, thus, stimulate the competitive theory basis of the economy.

*Id.* Thus, unless appellant's option violates these purposes, we will not interfere with the parties' right to contract. *See Mattern,* 367 S.W.2d at 320.

■ A fixed-price purchase option of unlimited duration that restricts alienation of real property has been held to be unreasonable and void as a matter of law. *See Gray,* 623 S.W.2d at 174; *see also Gray,* 623 S.W.2d at 175 (Keith, J., concurring). We conclude that appellant's option is an unreasonable restraint on alienation as a matter of law.

Appellant's option violates the second and third stated purposes of the rule against alienation restraints. First, the option hinders the free flow of real property in society because appellee has only two alternatives: use the warehouse or sell it to appellant for a fraction of its worth. The vast disparity between the property's market value and the fixed sales price effectively forecloses alien-

ation forever, *see Gray,* 623 S.W.2d at 172, thus depriving society of the benefit of having the warehouse put to its best use. Further, even should appellee attempt to alienate the warehouse, the uncertainty of the investment would prevent a prudent purchaser from paying the market value for the property.

Second, this unlimited, fixed-price option prevents appellee from satisfying its current exigencies. The agreed market price of the warehouse, without the option, is about $550,000, yet appellee could only obtain about $80,000 in a sale to appellant. Thus, appellee is denied the benefit of approximately $470,000 to meet any current exigencies that might arise.

We hold that appellant's fixed-price option, which operates to restrain alienation for an unlimited period, is an unreasonable restraint on alienation and is void as a matter of law. Appellant's first point of error is overruled.

■ Appellant's second point of error alleges that a material fact question exists regarding his breach of option counterclaim. Because we have concluded that the option is void, as a matter of law, it necessarily follows that any fact issue on breach of a void option would not be *material.* We overrule appellant's second point of error.

## FRAUD COUNTERCLAIM

Appellant's third point of error asserts that summary judgment was improper as to his fraud counterclaim because "[b]y its nature, the existence of fraud is a question of fact for the jury that precludes [s]ummary [j]udgment." Appellant relies on *Maddux v. Brownen,* 759 S.W.2d 183, 185 (Tex.App.–Waco 1988, writ denied), and *Fisher v. Trees, Inc.,* 713 S.W.2d 162 (Tex.App.–Texarkana 1986, writ ref'd n.r.e.). We agree that appellant's cited authority stands for the proposition that the *existence* of fraud is a question of fact. Whether appellant may maintain a *claim* for fraud, however, is a different matter.

---

7. Although these three purposes are discussed in the rule against perpetuities section of the Restatement (First), the restraints on alienation part specifically references them. *See* RESTATEMENT (FIRST) OF PROPERTY, Pt. II, intr. note (1944).

Appellant's first amended counterclaim, his live pleading, alleges that appellee falsely represented to him that appellant could purchase the warehouse at book value from appellee should appellee cease using it. Appellant further alleges that appellee knew this representation was false at the time it was made. Finally, appellant states that appellee intended for appellant to rely and that, in fact, appellant did rely on this representation to his detriment. Appellant alleges he suffered the "damages described above," that is, his breach of option damages.

In *Cissne v. Robertson*, 782 S.W.2d 912 (Tex.App.–Dallas 1989, writ denied), a real estate salesman brought suit against three partners to recover real estate commissions. In addition to other causes of action, the salesman alleged breach of contract and fraud. This Court upheld a summary judgment denying the breach of contract claim on the grounds that the salesman was not entitled to the commission under a real estate licensing statute. *Id.* at 917. Despite the existence of a contract, the salesman possessed no legal right to the commission. *Id.* at 917–18.

This Court affirmed the summary judgment on the salesman's fraud claim, too. We concluded that under his theory of fraud, the salesman had to first establish a legal right to the commission before prosecuting a complaint that the partners defrauded him out of it. *Id.* at 918. That is, without a legal right to the commission, the salesman could not recover in tort for the partner's lack of performance of the contract. If such recovery was allowed, the salesman could have avoided the effect of the statute and recovered a commission he was not entitled to receive. *Id.*

■ We conclude that our opinion in *Cissne* controls the disposition of appellant's third point of error. Appellant seeks to recover his contract damages denied him by the rules prohibiting unreasonable restraints on alienation of real property by asserting the same damages in tort. To allow this recovery would circumvent the public policy supporting the rules. We hold, therefore, that appellant may not recover damages for tortious conduct asserted to deprive a party

of a legal right that he does not possess. *Id.* Appellant's third point of error is overruled.

## VENUE

In his fourth point of error, appellant asserts that the trial court improperly overruled his motion to transfer venue from Dallas County to Jefferson County because the appellee's declaratory judgment action did not accrue in Dallas County. Appellee relies on *Humphrey v. May*, 804 S.W.2d 328 (Tex. App.–Austin 1991, writ denied), and *Texas City Refining, Inc. v. Conoco, Inc.*, 767 S.W.2d 183 (Tex.App.–Houston [14th Dist.] 1989, writ denied), to support venue in Dallas County. He argues that venue in Dallas County was proper because the underlying agreement was reviewed, discussed, and executed in Dallas County. We agree with appellee.

Appellant does not argue that this case is controlled by a mandatory venue statute, but that Dallas County was improper under the permissive venue statute. This "general" venue statute states:

> All lawsuits shall be brought in the county in which all or part of the cause of action accrued or in the county of defendant's residence.

TEX.CIV.PRAC. & REM.CODE ANN. § 15.001 (Vernon 1983). It is undisputed that defendant-appellant resides in Jefferson County. Thus, the issue is whether all or part of appellee's declaratory judgment action "accrued" in Dallas County. We hold that it did.

■ Although the warehouse was located in Jefferson County and the "tender" under the option provision occurred in Jefferson county, Jefferson County was not the only possible venue for this suit. Appellee's declaratory judgment action requested an interpretation of the agreement. It is undisputed that the agreement was executed in Dallas County.

In a suit based on a contract, "venue can be maintained in the county where the agreement was made." *E.D.S. Energy Dev. Servs., Inc. v. Bandera Trucking Co.*, 601 S.W.2d 215, 216 (Tex.Civ.App.–Eastland 1980, no writ); *see also Pool Co. v. Hydra–*

*Rig, Inc.,* 626 S.W.2d 320, 322 (Tex.App.–Fort Worth 1981, no writ). Appellant asserts, however, that both the *E.D.S. Energy* and *Pool Company* cases are irrelevant because of the 1983 amendment to the general venue statute changing "arose" to "accrued." *See Krchnak v. Fulton,* 759 S.W.2d 524, 526 (Tex.App.–Amarillo 1988, writ denied). We are not persuaded.

In two disputed contract cases, *Humphrey v. May,* 804 S.W.2d at 329, and *Texas City Refining, Inc. v. Conoco, Inc.,* 767 S.W.2d at 185, courts upheld venue in counties where the contracts were either negotiated or partially executed. In fact, the court in *Humphrey* relied on *E.D.S. Energy. Humphrey,* 804 S.W.2d at 329. Appellant's argument is without merit. We overrule point of error four.

All points of error being overruled, we affirm the judgment of the trial court.