**MARGARET L. CREQUE, Plaintiff**

**v.**

**TEXACO ANTILLES, LTD. a/k/a TEXACO ANTILLES LIMITED and**
**TEXACO CARIBBEAN, INC., Defendants**

Civil No. 397/1996

Territorial Court of The Virgin Islands

Divison of St. Thomas and St. John

February 21, 2001

HODGE, *Judge*

## MEMORANDUM AND ORDER

(Entered February 21, 2001)

Before the Court are Plaintiff Margaret L. Creque's and Defendants Texaco Antilles, Ltd., a/k/a Texaco Antilles Limited, and Texaco Caribbean, Inc.'s cross motions for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTS

On June 7, 1996, Plaintiff filed suit against Texaco Antilles, Ltd., a/k/a Texaco Antilles Limited ("TAL") and, Texaco Caribbean, Inc., ("TCI") claiming breach of contract, damages, and unjust enrichment. Plaintiff based these claims on a written Option Agreement dated June 27, 1963 between TAL and herself. The Agreement granted Plaintiff a 'right of first refusal' to buy Lot No. 1, Estate Demerara, St. Thomas, Virgin Islands, from TAL upon notice of a *bona fide* offer for sale of the property. However, on May 16, 1974, TAL transferred the property to TCI by warranty deed without notifying the Plaintiff.

This transfer, Plaintiff contends, amounted to a sale of the Property and that, as a result, her 'right of first refusal' should have been triggered upon TAL receiving an offer from TCI. On the other hand, Defendants contend that this transfer was not a sale, but was a mere corporate restructuring. As a result, Defendants argue, Plaintiff's 'right of first refusal' was not triggered. Further, Defendants maintain, the Option Agreement created a perpetuity and that, as a result, it was void.

## DISCUSSION

A court should grant a motion for summary judgment when there is no genuine issue as to any material fact. In addition, the court must find that the movant is entitled to judgment as a matter of law. Rule 56 Fed. R. Civ. P. Where there is a dispute as to a fact that might affect the

outcome of the case, summary judgment cannot be granted. *See Carty v. Hess Oil Virgin Islands Corporation,* 42 V.I. 125, 129 (D.V.I. App. Div. 1999). In this matter, there are genuine issues with respect to facts that could affect the outcome of the case, therefore, both Plaintiff's and Defendants' Motions for Summary Judgment shall be denied.

## 1. Is the Right of First Refusal Void as Violative of the Rule Against Perpetuities

Defendants argue that they are entitled to Summary Judgment because the Option Agreement contains a perpetuity, and that, as a result, any interest it purports to create fails as violative of the common law Rule Against Perpetuities. *See* Supplemental Memorandum in Support of Motion for Summary Judgment at 5.

The Option Agreement at issue in this case identifies the parties as follows:

> This Agreement made and entered into this 27th day of June, 1963, by and between TEXACO ANTILLES, LTD., a corporation organized under the laws of the Province of Ontario, Canada, hereinafter called the "First Party", and MARGARET L. CREQUE, hereinafter referred to as the "Second Party", *or her nominee, heirs or assigns.* [Emphasis added].

The Rule Against Perpetuities reflects a belief that owners of real estate should be free from the 'dead hands' of former owners who seek to control the property into infinity and that society should be controlled by its living members. Traditionally, the rule prohibits any interest that will vest, if at all, more than 21 years after any life in being. *See Restatement (Second, Donative Transfers) of Property* § 1.1 (1981).

### a. Options and Preemptions in Land

Courts have taken a wide variety of approaches in determining the validity of 'rights of first refusal' that may vest beyond the period of the rule. Typically, however, they have been more lenient towards 'preemptive rights' than towards 'options.' This is because an option may be exercised whether the property owner decides to sell the property or not. Thus, future owners of the property will be bound by terms, often including the selling price, which may be unreasonable.

109

In contrast, a person with a preemptive right to land may elect to buy the property *only* when the property owner decides to sell. Further, he is normally required to match (or beat) the purchase price offered for the property. In effect, preemptive provisions work to create another buyer once the property owner decides to sell. Thus, they are much less of a restraint on alienation — the current owner of the property is free to sell at any time he desires.

### i. What-Might-Happen Approach

Even though courts typically favor 'preemptive provisions' to outright 'options', some courts have found preemptive provisions invalid where, as in our case, they contain words of succession, such as 'heirs, assigns, or successors'. *See Saulsberry v. Saulsberry,* 290 Ky. 132, 160 S.W.2d 654 (Ky. 1942). This is because, words of succession create an interest in an unidentified group of people (i.e. the heirs of Margaret L. Creque) — some of whom might not even be born until the period of the rule has expired. Thus, employing the so-called 'what-might-happen approach', these courts note that another member of the class might always be born. By looking at what *might* happen, the grant is invalid because the interests of some of the members of the class may vest too remotely.

### ii. Middle Ground

By its very nature, a preemptive right will interfere with the alienability of land to some extent or another. Noting the harsh results of the 'what-might-happen approach,' some courts have adopted a variety of other approaches, constituting a sort of 'middle -ground'. *See Weber v. Texas Co.,* 83 F.2d 807 (5th Cir. 1936) (preemptive provision not within scope of rule against perpetuities because it is merely a contract and creates no interest in land). For example, the rule has been abolished by statute in many states with regard to condominiums and cooperative apartments. Further, commercial leases with preemptive provisions have traditionally been exempt from the rule. *See Restatement of Property* § 395; *Pratt v. Prentice,* 166 A.D. 906, 151 N.Y.S. 259 (1914). Other courts have made a distinction between preemptive provisions for the purchase of land and those relating to intangible property such as stock. *Continental.Cablevision v. United Broadcasting,* 873 F.2d 717 (4th Cir. 1989) (expressing no opinion as to real estate).

### iii. Wait-and-See Approach

Some courts have simply decided to 'wait-and-see' if a preemptive provision violates the rule against perpetuities when it is actually exercised. *See Burgess v. Howe,* 134 Vt. 370, 359 A.2d 652 (Vt. 1976). According to this approach, an interest is valid if it vests before 21 year after a life in being. An interest fails only if it *does not vest* within the period of the rule.

In some states, such as Pennsylvania, this approach has even been written into law by the Legislature. In addition, although it is admittedly the minority position, the wait-and-see approach has been expressly adopted by the *Restatement (Second) of Property. See Restatement (Second, Donative Transfers) of Property* § 1.4, Comment a (1981).

### b. The Restatement of Property

Title I of the Virgin Islands Code, section 4, allows the Court, to look to the Restatements for the rules of decision in cases, in the absence of local laws to the contrary.[1] *Restatement (Second, Donative Transfers) of Property* § 4.4, Preemptive Provisions, provides:

---

[1] Interestingly, both parties have apparently assumed that the Donative Transfers provisions of the RESTATEMENT (SECOND) OF PROPERTY (1981) are relevant in this commercial, or nondonative, transaction. This is so, even though plaintiffs allege that this was an arm's length commercial sale. However, this assumption may not be conclusive. Because the Restatement deals with *donative* transfers, it excludes any treatment of commercial transactions. *See* RESTATEMENT (DONATIVE TRANSFERS, SECOND) OF PROPERTY, Introduction, p.1 (1981). However, the Restatement also notes that "the rules developed in this [subpart], to the extent that they *permit* restraints on alienation, are equally permissive in regard to non-donative transfers". RESTATEMENT (DONATIVE TRANSFERS, SECOND) OF PROPERTY, Pt. II, intr. note (1981)(emphasis added). "In other words, if an alleged restraint on alienation is valid under the Restatement provisions, it is valid whether the transaction is donative or nondonative." *Procter v. Foxmeyer Drug Co.,* 884 S.W.2d 853, 858 (Tex. App. 1994). This is because in donative transfers, the grantor unilaterally conveys the property under terms of his choosing, but in commercial agreements, both parties have the opportunity to negotiate the terms. Thus, "public policy should be more lenient when the [parties] consent, though freedom of contract, to limit his own power to convey in the future". Proctor, 858. It follows that the RESTATEMENT (DONATIVE TRANSFERS, SECOND) OF PROPERTY can conclusively determine the validity — but not the invalidity — of restraints on alienation resulting from nondonative transactions". *Proctor* at 858.

A provision in a donative transfer of an interest in property to the effect that the interest is subject to a right of first refusal in a designated person in the event the interest is offered for sale is not a restraint on alienation ... if the terms of the right of first refusal are reasonable in regard to ... the time allowed for the exercise of the right of first refusal. *Id.*

Further, Comment c to that section provides:

The preemptive provision is invalid under the wait-and-see rule if the right of first refusal is exercised beyond the perpetuities period, but only if that right could be exercised by a person who was not in being when the transfer that included the preemptive provision was made could the preemptive provision possibly be exercised beyond the period of the rule against perpetuities. *Id.*

Thus, the language of the Option Agreement does not, according to the Restatement, create an invalid perpetuity because the interest *has*, according to Plaintiff, vested within the period of the rule.

Luckily, the applicability of the Restatement to this case need not be decided conclusively at this time. Contracts are to be construed against the drafters and should be read so as to give lawful effect to the intent of the parties.[2] After all, it must be recognized that Defendants are attempting to invalidate their own contract.

██ ██ In the case of a contract with alternate conditions precedent, such that one of the conditions will occur, if it ever occurs, within the period allowed by the rule against perpetuities the interest is valid under the what-might-happen approach, if the interest that *does in fact vest* within the period of the rule is *the one that had to vest*, if it ever were to

---

[2] In "the United States ... it has become well settled that, in the interpretation of a statute, the interpretation will be selected which renders the statute constitutional rather than unconstitutional, even to the extent of warping words.... The rationale for this rule is directly applicable to the construction of [transfers] under the Rule against Perpetuities. One starts with the inference that the [parties] (like Congress) intended to do a legal act rather than an illegal one, and one permits this basic intention to overcome inferences as to minor intentions." *Continental Cablevision v. United Broadcasting,* 873 F.2d 717, n.17 (4th Cir. 1989). Consequently, it may be inappropriate to strictly construe an agreement. *See Bruns v. Rennebohm Drug Stores,* 151 Wis. 2d 88, 442 N.W.2d 591 (Wis. 1989) (inappropriate to strictly construe agreement because of the needs of closely held corporations).

vest, within the period of the rule. (Under the wait-and-see approach, the interest is valid if *either* of the contingencies occur within the time prescribed by the rule.) *See Restatement (Second, Donative Transfers)* of *Property* § 1.4, Comment o (1981); *Springfield Safe Deposit & Trust Co.,* 268 Mass. 62, 167 N.E. 261 (Mass. 1929).

In light of this well recognized exception to the Rule Against Perpetuities, courts have recognized that a grant may be severable where part of it may be saved. Thus, courts may sever a gift to an individual and to a class into separate gifts. *Continental Cablevision v. United Broadcasting,* 873 F.2d 717 (4th Cir. 1989*)* (citations omitted). Thus, in our case, the Option Agreement can be read to include two alternate non-vested interests: (1) a right of first refusal belonging to Margaret Creque personally, *or* (2) a right of first refusal in her heirs, successors and assigns. Obviously, at least the first of these two alternate interests must vest within the period of the rule. Here, Plaintiff can maintain that the interest that must vest (Plaintiff's 'right of first refusal') *has in fact vested.*

The language of the Option Agreement supports this interpretation in that it identifies Plaintiff alone as the "Second Party". Further, the grant is worded as conveying an interest to Plaintiff *"or"* her nominees, heirs or assigns. Thus, Plaintiff can correctly argue that the provision is valid under either the wait-and-see approach or the more traditional what-might-happen approach. The Court therefore concludes that the preemptive rights of the plaintiff are not violative of the Rule Against Perpetuities and the right of first refusal is valid and binding on the Defendant. Thus, Defendant's Motion for Summary judgment on this issue is denied.

## 2. Was the Conveyance a Sale of the Property

A sale occurs upon the transfer for value of a significant interest in the subject property to a stranger to the contract containing the option. *Prince v. Elm Investment Co.,* 649 P.2d 820 (Utah 1982). Defendants argue that Plaintiff's 'right of first refusal' was not triggered because there was no *bona fide* offer for the sale of the property. Rather, they argue, the property was transferred within the company in the ordinary course of business and that, as a result, there was no sale. As evidence, Defendants point out that the conveyance was between subsidiaries of Texaco, Inc.; and that the Warranty Deed, executed May 16, 1974, transferring the property from TAL to TCI, only recited consideration of one dollar.

However, there is evidence that this recitation is misleading as to the actual consideration and as to the nature of the conveyance. According to a document entitled Minutes of Special Meeting of Shareholders, dated September 28, 1973, TAL shareholders resolved to *sell* all of its assets and property to TCI for the consideration of Five Thousand Dollars, and the assumption by TCI of all liabilities owing by the company. *See* Texaco Antilles Limited Minutes, September 28, 1973, at 2 [emphasis added]. This amount was reiterated in an Indenture between TAL and TCI effective September 30, 1973. A Purchase Agreement between the companies was also effective as of that date.

Further, the Purchase Agreement identifies liabilities in excess of $500,000.00, which were to be assumed by TCI. Therefore, TCI was to execute a Note, payable to TAL, in the amount of $ 2,666,699.19 (the difference of the assets owned by TAL and the liabilities owing by TAL). Purchase Agreement at 2. Presumably, this figure represents the book value of the company. There is nothing in the documentary evidence presented by Defendants which would indicate that the parties treated the transaction as anything other than a sale by a valid corporation to another valid corporation for value.

■ To determine whether the contract price, and thus the offer for sale, was *bona fide* requires an examination of the intent of the parties, as well as how contract price compares with the fair market value of the property, or, what a disinterested party would have paid. *See Black's Law Dictionary* 6th Ed., p. 71 (1991). The mere fact that both the Buyer and the Seller were subsidiaries of Texaco, Inc., is insufficient evidence to suggest that the transfer was not at arms' length. Thus, the question of whether there was a *bona fide* offer for the sale of the property remains an issue of fact in this case. As this fact is material to the outcome, both parties' Motions for Summary Judgment will be denied.

## ORDER

Wherefore, in accordance with the foregoing Memorandum, and upon consideration and due deliberation; it is hereby

ORDERED that the parties' Motions for Summary Judgment are DENIED; and it is further

ORDERED that copies of this ORDER shall be directed to the parties' counsel of record.