# IN THE MATTER OF THE ESTATE OF DIDACE MONSANTO, Deceased

Probate No. 83/2000

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

April 19, 2001

HODGE, *Judge*

## MEMORANDUM OPINION

(April 19, 2001)

Before the Court is the Estate of Didace Monsanto's Memorandum of Law, filed in response to this Court's order, in support of its assertion that the will of Didace Monsanto is void. The Estate argues that the will is void because it distributes all of the decedent's assets to a trust in violation of the common-law Rule Against Perpetuities. The Estate seeks an order declaring that both the trust and will are void as a matter of law, or alternatively, an order terminating the trust with the consent of the beneficiaries. For the reasons set forth below, each of these requests shall be DENIED.

## DISCUSSION

Mr. Monsanto left what purports to be his last will dated December 17, 1999. In the will he left all of his property to be distributed to a living trust. However, the Executrix under the will, who also is the named trustee of the trust, has executed a declination, and has resigned. To

further complicate matters the Estate argues that there are not enough assets available to secure the service of a corporate trustee, as called for in the will and trust. Thus, the Estate wishes to have the trust terminated, and the assets distributed, out of practical considerations.

Edward and Marie Distant, Mr. Monsanto's mother and stepfather, are the sole beneficiaries of the trust, and they have no objection to disregarding the will and trust and proceeding under the laws of intestacy. Further, Mr. Distant has executed an affidavit wherein he states that he is familiar with the will and the trust, that he is aware that he is a beneficiary thereunder, and that he has no objection to having his wife inherit all of the assets of her son's estate as she is the sole heir.

## A. The Rule Against Perpetuities.

The Petition for Settlement Without Administration submitted to the Court notes that the trust is void because it violates the Rule Against Perpetuities. Further, Petitioners contend that, since the trust is void, so too is the will, since the will purports to transfer all of Didace Monsanto's assets to the trust.

In its memorandum, Petitioner argues that: (1) the Restatement of Property correctly sets forth the Rule Against Perpetuities; (2) an interest in property is only valid if it must vest, if at all, within the period of the Rule; (3) the interest in property subject to the Trust "may never vest" and (4) the Trust "therefore violates the Rule Against Perpetuities." Memorandum at 2. Obviously this position of the Estate is incorrect.

The common-law Rule Against Perpetuities does not require that an interest vest within any time period. To the contrary, it provides that *if* an interest is going to vest, it must do so within the period of the Rule. Therefore, the fact that an interest "may never vest" is of no consequence.

The relevant inquiry is whether there is an interest that might vest and, if so, whether that interest must vest within a certain period of time. For example, the language cited by the Estate provides that if Marie Distant, the descendant's mother, does not take certain action during her life, then her interest in the trust property will not vest. Specifically, the Estate cites the following language as violating the Rule Against Perpetuities:

32

If Marie Distant does not validly exercise this limited power of appointment, upon her death, the balance of the trust property shall remain in the trust in perpetuity. Memorandum at 2.

From this language it is clear that we will know during *Marie Distant's lifetime* whether the contingency (whether or not she will exercise her power of appointment) will occur. Either way, the issue will certainly be resolved, and any interests shall vest, during "some life in being," namely, Marie Distant's life. Therefore, any interest that the language creates must vest, *if at all*, within the period of the Rule.

A more complete analysis of the Trust reveals a slightly more complicated distribution scheme but the result is the same. If Marie Distant exercises her power of appointment, the trust property will be distributed "to such persons, including the beneficiary's own estate, in the manner in which the beneficiary shall elect." Living Trust of Didace Monsanto, Article 11, Section 4, at 11-3. If she does not exercise her power of appointment, then the Trustee will distribute the property to her "then living descendants." *Id.* at 11-4. Either of these contingencies must take place, if at all, during the life of Marie Distant, and thus, do not provide a basis for voiding the trust, as she was a life in being at the time of the creation of the will and trust.

The trust further provides that if, at the time of her death, Marie Distant has not exercised her power of appointment, and has no then living descendants, then the Trustee should distribute the property to Mr. Monsanto's then living descendants. If he has no then living descendants, then the items shall remain in trust in perpetuity. *Id.* at Article 10.

■ Because the only persons who might take under these provisions would do so during, or immediately following, some life in being at the time of the creation of the will, these contingent future interests do not violate the Rule. Further, these provisions must be read in light of Article Twelve, the perpetuity saving clause,[1] which provides that the Trust will terminate by its own terms within the period of the Rule.

Further, the Estate's argument that the Restatement of Property sets forth the law of the Virgin Islands is only partially correct, and to the

---

[1] As is typical of perpetuity saving clauses, the length specified (*i.e.* 21 years after the death of Mr. Monsanto) exceeds by a substantial margin the time when the interests created in the Trust would actually vest, or fail to vest by their own terms. *See*, 8 U.L.A., Master Ed. 325 (West 1993).

33

extent that the Estate is arguing that the Trust is invalid, it is incorrect. In *Creque v. Texaco Antilles, Ltd.*, 43 V.I. 107 (2001) this Court applied the "wait and see" approach, as set forth in the RESTATEMENT (SECOND) OF PROPERTY, *Donative Transfers*, § 1.4 (1983). Under the 'wait and see' approach, a court must wait and see what actually does happen before it may invalidate a nonvested interest. Thus, because the Estate argues that the trust is invalid, it should have looked to the 'wait and see' approach as set forth in *Creque, supra,* and the RESTATEMENT (SECOND) OF PROPERTY (*Donative Transfers*) § 1.4 (1983).

However, this approach does not affect a nonvested interest that is valid under the common-law rule. This is because the common-law Rule Against Perpetuities contains both a validating and an invalidating side. The validating side of the Rule provides that

> A nonvested property interest is valid when it is created (initially valid) if it is then certain to vest or terminate (fail to vest)—one or the other—no later than 21 years after the death of an individual then alive. 8 U.L.A., Master Ed. 322 (West 1993).

On the other hand, the invalidating side of the traditional Rule Against Perpetuities provides for the invalidation of a nonvested property interest where such certainty is lacking.

█ Thus, where, as here, an interest falls under the validating side of the Rule Against Perpetuities, there is no need to 'wait and see.' To the contrary, the nonvested interest does not violate the common-law rule, and is valid from its creation. Nonetheless, when seeking to invalidate an interest, one must look to the Restatement (Second) of Property and must 'wait and see.'

## B. Termination of the Trust.

The Estate also argues that the Trust may be terminated by consent of the beneficiaries. It appears that each of the named beneficiaries wish to terminated the Trust because: the only named executor under the Will has declined to serve; the trustee has resigned; and, it is unlikely that a corporate fiduciary would agree to serve given the small value of the Trust property. Therefore, the Estate explains, the will should fail as a practical matter and should be terminated with the consent of the beneficiaries.

Where the settlor and all the beneficiaries join together to apply for termination, a trust will be terminated. However, where, as here, the settlor does not join in the request (*i.e.* because he is dead), the majority of American jurisdictions will not terminate a trust where the purpose of that trust remains unaccomplished. *See,* George C. Bogart, LAW OF TRUSTS § 152 (West 1973). A trust will last until the settlor's purposes have been accomplished, because equity will not "compel the useless act of holding the property in trust for a longer period." *Id.* at § 150; *see also,* RESTATEMENT (SECOND) OF TRUSTS, §§ 165, 167, 335, 398, 399.

■ The purposes of Mr. Monsanto's Trust are (1) providing for his obligations after his death, (2) providing for his mother Marie Distant and his stepfather Edward Distant during their lives and, (3) to provide for any descendants. It has not been suggested that these purposes have been accomplished, or that they are impossible to accomplish. However, each of these purposes are limited by Article Thirteen, Section 10 which provides that, if the trust becomes "uneconomical to administer, the trustee may terminate the trust and distribute the property equally among the beneficiaries." Trust at 13-4. Because the Estate is essentially arguing economic hardship, this provision sets forth the appropriate procedure for securing termination of the trust.

Mr. Monsanto acted as the sole trustee during his life, and was replaced by Lenore Edgecombe upon his death. Ms. Edgecombe has resigned. The trust provides that in the even that no trustees are available; the beneficiaries shall name a corporate fiduciary. If they cannot agree on one, they may petition the court to designate a corporate fiduciary.

Therefore, upon appointing a new trustee, or petitioning the Court to do so on their behalf, the beneficiaries should consult with the trustee as to the advisability of terminating the trust, and distributing the assets, for economic reasons. If, in fact, the trust property is of such low value that a trustee cannot be identified, as argued by the Estate, then it would be advisable to meet with Ms. Edgecombe, and to request that she withdraw her resignation, and agree to serve for the limited purpose of terminating the trust, or at least delegating the authority to do so.