Opinion issued January
19, 2012.

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00113-CV

———————————

Tyco Valves & Controls, L.P., and TV&C GP Holdings, Inc., Appellants

V.

Arsenio Colorado, Steven
Craig, Umit Davulcu, Richard Gonzales, Lanny Heinrich, Leonard Hill, Andy
Huynh, Chris Kahrig, Lay Keonakhone, Greg Lambousy, Tung Le, Chris Luckey,
Fernando Macias, Jorge Martinez, Raul Martinez, Kenneth Nash, Jimmy
Phoumlavanh, and Souk Vongsamphanh,
Appellees



 



 

On Appeal from the 125th District
Court 

Harris County, Texas



Trial Court Case No. 0819895

 



 

 

DISSENTING OPINION

          I join the lead opinion’s conclusion that this case
is not preempted by ERISA, however, because I believe that Dresser Rand is not
the “successor” to Tyco, I dissent.  I
would affirm the judgment of the trial court. 


The
Retention Incentive Agreements (“RIAs”) provided that the Gimpel employees were
to receive severance if they were not offered comparable employment with
Tyco.  The parties to the RIAs were Tyco
Valves and Controls (“Tyco”), its successors and assigns, and the named
employee in each RIA.  

The Gimpel
employees were not offered employment with Tyco after the sale of the
plant.  They were, however, offered
employment with Dresser Rand, the company that bought the Gimpel Unit.  Thus the only way to find that Tyco did not
breach its contract with the Gimpel employees when it failed to pay the
severance promised in the RIAs is to somehow find that Dresser Rand is the
“successor” of Tyco.

The lead
opinion makes this leap, despite that fact that Dresser Rand only bought an
asset of Tyco, the Gimpel Unit, and that Tyco remained a corporation after its
sale of the Gimpel Unit.  It makes this
leap despite the fact that the Asset Purchase Agreement specifically provided
that Dresser Rand would not assume liability for:

(i) any wages, salary, severance, bonuses . . . (ii) any duties,
obligations or liabilities arising under any employee benefit plan, policy, or
practice . . . or (iii) any other amounts due to any employees or former
employees of the Business, in each case which accrue or arise prior to the
Closing Date . . . .[1] 

                                                                                                      

It makes this leap despite the
fact that, pursuant to the Asset Purchase Agreement, after a prospective
employee accepted an offer of employment with Dresser Rand, Tyco was to
terminate that employee and retain
responsibility for any severance or termination obligations due to the
employee.[2] 

                   In
Texas, the term “successor corporation” has long been associated with the
entity that succeeds to the property and corporate rights of a
corporation.  See Thompson v. N. Tex. Nat’l Bank, 37 S.W. 2d 735, 739 (Tex.
Comm’n App. 1931, holding approved).  A
“successor corporation” is normally used in respect to “corporations becoming
invested with the rights and assuming the burdens of another corporation by
amalgamation, consolidation, or duly authorized legal succession.”  Procter
v. Foxmeyer Drug Co., 884 S.W.2d 853, 861 (Tex. App.—Dallas 1994, no
writ).  Furthermore, this Court has held that
“[t]he term ‘successor’ has . . . been defined as ‘one who takes the place that
another has left, and sustains the like part or character.’”  Enchanted
Estates Cmty. Ass’n, Inc. v. Timberlake Improvement Dist., 832 S.W.2d 800,
803 (Tex. App.—Houston [1st Dist.] 1992, no writ). 

In this case, Dresser Rand did not become invested
with the rights and/or assume the burden of Tyco by “amalgamation,
consolidation, or duly authorized legal succession,” nor did it take the place
of Tyco.  Procter, 884 S.W.2d at 861. 
Instead, it only bought assets from Tyco.  Indeed, even within the context of hiring the
Gimpel employees, it did not “assume the burden” of Tyco.  See id.  Dresser Rand merely agreed to hire Tyco’s
employees.  It specifically did not take on Tyco’s burdens concerning
these employees.  In fact, Dresser Rand
specifically refused to assume liability for wages, salary, severance and
bonuses due to the Gimpel employees, as well as for any duties or obligations
arising under any employee benefit plans or severance packages.  See
Asset Purchase Agreement, Sections 1.5(b) and 4.1(d).

An
agreement on the part of a corporation to hire employees pursuant to an asset
acquisition with a second corporation is not tantamount to becoming the
“successor” of that second corporation. 
The fact is that, pursuant to the Asset Purchase Agreement itself, Tyco
was obligated to and did fire the Gimpel employees once Dresser Rand hired
them.  When Tyco fired the Gimpel
employees, Tyco remained liable to them for the severance it had promised them,
as the trial court found.  Because I
would affirm the trial court’s judgment, I dissent. 

 

 

                                                Jim Sharp

Justice

 

Panel consists of Justices Keyes, Sharp, and
Massengale

 

Justice Sharp, dissenting. 

                                      

 











[1]           Asset Purchase Agreement, Section 1.5(b).

 





[2]
          Asset Purchase Agreement,
Section 4.1(d) (“Notwithstanding anything to the
contrary contained in this Agreement, [Tyco] shall be solely responsible for
the payment of any and all compensation, retention, separation, severance or
similar payments due or to become due to any employee of [Tyco] (including any
Prospective Employee or any Hired Employee) pursuant to any agreement,
arrangement, commitment, applicable law, plan or course of dealing between such
employee and [Tyco], including without limitation any termination payments or
termination obligations arising in connection with this Agreement.”).