OPINION
 

 LARSEN, Justice.
 

 This appeal stems from a judgment in favor of plaintiff Darrell Jackson, in which he was awarded 5% of gross billings of defendants Capitan Enterprises, Inc. and its subsidiaries West Texas Water Supply and Great Plains Water Systems, Inc. for salt water oilfield flooding. We reverse and render.
 

 FACTS
 

 In the early 1970’s, plaintiff Darrell Jackson and members of his family owned Andrews Industrial Water, Inc. (AIWI), a company engaged in the sale of fresh water for oilfield flooding in Andrews County.
 
 [1]
 
 Andrews Industrial Water was a small company, owning only a few water wells, a one-mile pipeline, and possessing a take-or-pay contract with only one customer. In 1971, Andrews sold his stock to a company called GPWC for $364,715.64. GPWC was owned by a larger company called Telecom, or TCC. The AIWI sale included a non-competition agreement prohibiting Jackson from selling water for oilfield flooding in Andrews or Lea Counties for ten years. In return for that agreement, he was to receive:
 

 5%
 
 of AIWI’s, GPWC’s, TCC’s or any
 
 Related Company’s,
 
 their successors or assigns, prior month’s actual gross billings from sales to
 
 any oilfield waterflood units in Andrews County, Texas, or Lea County, New Mexico
 
 under contracts consummated after Closing Date.... [Emphasis added].
 

 In 1977, GPWC sold its assets to Great Plains Water Corp. In the sales contract, Great Plains Water Corp. specifically assumed liability for GPWC’s promissory note to Jackson, but the contract was silent as to the 5% payments which were compensation for the non-competition agreement. Nevertheless, Great Plains Water Corp. paid
 
 5%
 
 of its gross billings for water sales in Andrews
 
 *774
 
 County to Darrell Jackson. It continued to make these payments until 1983, when it sold its assets to Great Plains Water System, Inc, a subsidiary of Capitan Enterprises. GPWC, Great Plains Water Corp., and Great Plains Water System, Inc.
 
 [2]
 
 were all involved in supplying fresh water for oilfield injection. None owned salt water systems.
 

 Meanwhile, Shell Oil Company had owned and operated a large salt water system in the same area, the West Texas Water Supply System. In 1983, it sold that system (needing millions of dollars in repairs) to T. Lee Enterprises, which later became Capitan Enterprises, Inc. After acquiring the Shell system, Capitan made large salt water sales to various oilfield customers, including some in Andrews County. The Great Plains fresh water system and Capitan salt water systems were completely independent. Capitan paid Darrell Jackson nothing on its salt water sales.
 

 Shell, in preparing for the sale of its West Texas Water Supply System, had solicited bids. Darrell Jackson was one of those bidding on the system, and was therefore given detailed maps showing the system’s delivery points, estimates of expected water deliveries, including those in Andrews County, and was even taken on a personal tour of the system. He was thoroughly familiar with it before the ultimate decision was made to accept Capitan’s bid in 1983.
 

 The only connection between Jackson and Capitan Enterprises (excluding their competitive bids on the Shell system) was the string of purchases wherein GPWC acquired Andrews Industrial Water in its entirety in 1971 (a stock sale); Great Plains Water Corp. acquired the assets of GPWC in 1983; and Great Plains Water System, Inc. (a subsidiary of Capitan) acquired the assets of Great Plains Water Corp. in 1983.
 

 Jackson, although he had known since the Shell sale in 1983 that Capitan was selling water in Andrews County, never suggested until 1990 that he was owed money on the salt water sales. In April 1990, Jackson asked to audit Capitan’s records, and for the first time claimed he was entitled to 5% of Capitan’s billings for the salt water system. In October 1990, Jackson filed this lawsuit claiming that amount was owed him, and urging that Capitan is a “related company” under the terms of his 1971 non-competition agreement with GPWC.
 

 Both Capitan and Jackson filed motions for summary judgment in the trial court. They agreed that the term “related company” was unambiguous. The trial court granted Jackson’s motion and denied Capitan’s, holding that Capitan was a “related company” under the contract. A jury trial ensued, and the jury found that Great Plains Water System had assumed the obligations to Jackson arising from the 1971 contract, through the intermediate assumption of those obligations by Great Plains Water Corp. The trial court, adopting Jackson’s theory of Capitan’s liability as a related company, entered judgment for Jackson for $269,475.90 for unpaid royalties on the salt water system from 1988 through 1991, as well as attorneys fees and interest. Defendants Capitan Enterprises, Inc., West Texas Water Supply System, and Great Plains Water System, Inc. appeal. For clarity, we will refer to them collectively as “Capitan.”
 

 STANDARD OF REVIEW
 

 In its Point of Error One, Capitan urges that the trial court erred in granting partial summary judgment to Jackson holding that Capitan was a “related company” under the 1971 agreement; in its Point of Error Two, Capitan urges that the trial court erred in denying its own motion for summary judgment, urging that the 1971 agreement, as a matter of law, could not entitle Jackson to a percentage of Capitan’s gross billings. In its related Point of Error Three, Jackson challenges the trial court’s entry of declaratory relief based on its rulings challenged in the first two points. We therefore review Capi-tan’s first three points of error under the law applicable to cross-motions for summary judgment.
 

 When both parties to a lawsuit file motions for summary judgment, and one is
 
 *775
 
 granted and the other denied, this Court may determine the propriety of the denial as well as the propriety of the grant.
 
 Lupo v. Equity Collection Service,
 
 808 S.W.2d 122, 125 (Tex.App.—Houston [1st Dist.] 1991, no writ). If we find reversible error in the denial of the losing party’s summary judgment, the proper course is to reverse and render judgment in favor of Appellant.
 
 Jones v. Strauss,
 
 745 S.W.2d 898, 900 (Tex.1988). The trial court’s decision on summary judgment receives no particular deference from this Court; we determine de novo whether a party’s right to prevail is established as a matter of law.
 
 Elam v. Yale Clinic,
 
 783 S.W.2d 638, 641 (Tex.App.—Houston [14th Dist.] 1989, no writ). Where, as here, the cross-summary judgments deal solely with interpreting the unambiguous terms of a contract, construction is a matter of law for the court.
 
 Coker v. Coker,
 
 650 S.W.2d 391, 393 (Tex.1983).
 

 RELATED COMPANY
 

 The non-competition agreement Jackson undertook upon the sale of AIWI reads, in relevant part, as follows:
 

 In consideration of the monies hereinafter stipulated to be paid to Jackson by GPWC, Jackson agrees not to compete with
 
 AIWI, GPWC, TCC or any company in which TCC has control or with which AIWI, GPWC or TCC is affiliated in respect to the water sales business for oil field waterflooding purposes in Andrews County, Texas and Lea County, New Mexico (“Related Company
 
 ”
 
 herein)
 
 for a period of ten (10) years from Closing Date. GPWC agrees to pay Jackson on the 1st day of each month following Closing Date, a sum of money equal to the sum of the following parts....
 

 [[Image here]]
 

 (2) 5% of ATWI’s, GPWC’s, TCC’s or
 
 any Related Company’s,
 
 their successors or assigns, prior month’s actual gross billings from sales to any oilfield waterflood units in Andrews County, Texas or Lea County, New Mexico under contracts consummated after Closing Date_ [Emphasis added].
 

 Generally, a party assuming contractual liability is liable to the same extent as the parly from whom it assumed the contract.
 
 Schultz v. Weaver,
 
 780 S.W.2d 323, 325 (Tex.App.—Austin 1989, no writ). The longstanding rule that an assignee to a contract “stands in the shoes” of the assignor is relied upon by both parties here, but their methods of interpreting this rule differ markedly. Jackson argues that once Great Plains Water Corp. assumed liability under the 1971 contract between GPWC and Jackson, it was as though the contract were typographically changed and the name “Great Plains Water Corp.” was substituted everywhere the name GPWC originally appeared. Again, when Great Plains Water System bought the assets of Great Plains Water Corp., another automatic substitution occurred. Jackson argues that the original 1971 contract was thus transmogrified to read:
 

 Great Plains Water System
 
 agrees to pay Jackson on the 1st day of each month following Closing Date, a sum of money equal to the sum of the following parts: (2) 5% of AIWI’s,
 
 Great Plains Water System,
 
 TCC’s or any Related Company’s their successors or assigns, prior month’s actual gross billings from sales to any oilfield waterflood units in Andrews County, Texas, or Lea County, New Mexico under contracts consummated after Closing Date,
 

 [[Image here]]
 

 Jackson shall have the right to audit the books of AIWI,
 
 Great Plains Water System,
 
 TCC or any Related Companies, their successors and assigns, ....
 

 The definition of “related company” is similarly changed to read:
 

 AIWI,
 
 Great Plains Water System,
 
 or TCC or any company in which TCC has control or with which AIWI, or TCC is affiliated in respect to the water sales business for oilfield waterflooding purposes in Andrews County, Texas, and Lea County, New Mexico....
 

 Thus, Jackson’s argument continues, Capitan (which owns all stock in Great Plains Water Systems) must necessarily be a related company and is obligated to pay Jackson a 5%
 
 *776
 
 royalty on all its salt water sales within the two counties, as well as provide Jackson with access to its financial records for audits. This is the theory with which the trial court agreed and upon which it entered summary judgment. Ultimately, it is the theory upon which the jury verdict and Jackson’s judgment for past due royalties rest.
 

 Capitan, as might be expected, interprets the law of assignments quite differently. It claims that the unambiguous definition of “related company,” which alone creates the obligation to pay 5% royalties to Jackson is defined in the original 1971 contract and remains unchanged no matter how many different entities may accept assignment of GPWC’s original obligation. It claims that the definition contained in the contract includes only the following as “related companies”:
 

 1. GPWC
 

 2. Andrews Industrial Water, Inc.
 

 3. Telecom Corp.
 

 4. Any company of which Telecom had control.
 

 5. Any affiliates of the named companies that are in the water business.
 

 Capitan points out that where contracting parties set out their own definitions of terms, the courts must enforce those definitions and may not substitute other meanings.
 
 Fulton v. Texas Farm Bureau Insurance Co.,
 
 773 S.W.2d 391, 391 (Tex.App.—Dallas 1989, writ denied).
 

 We conclude that Capitan’s interpretation of the law that an assignee “stands in the shoes” of an assignor is the correct one. To adopt Jackson’s theory would allow the terms of any contract, upon assignment, to change radically. We do not believe this is the law: an assignment is intended to change only
 
 who
 
 performs an obligation, not the obligation to be performed. Many Texas cases so hold in situations where the assignee has attempted to expand rights transferred from an assignor. See
 
 State Fidelity Mortgage Co. v. Varner,
 
 740 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (“An assignee obtains only the right, title and interest of his assignor at the time of his assignment, and no more.”);
 
 Kirby Forest Industries, Inc. v. Dobbs,
 
 743 S.W.2d 348, 354 (Tex.App.—Beaumont 1987, writ denied);
 
 Houchins v. Scheltz,
 
 590 S.W.2d 745, 751 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ);
 
 Carter v. Associates Discount Corp.,
 
 550 S.W.2d 399, 401 (Tex.Civ.App.—Amarillo 1977, no writ).
 
 [3]
 
 We believe that the same rule should apply equally to the other party to the original contract; its rights are neither enhanced nor diminished by the assignment. Here, the trial court’s acceptance of Jackson’s theory resulted in a judgment which dramatically altered the obligation undertaken and consideration accepted under the 1971 contract; a result clearly not contemplated by any party when the contract was entered into. To allow this construction to stand would result in a unreasonable, oppressive, and inequitable result, which we must avoid.
 
 Reilly v. Rangers Management, Inc.,
 
 727 S.W.2d 527, 530 (Tex.1987). We therefore hold that the trial court erred in granting partial summary judgment for Jackson and denying summary judgment for Cap-itan.
 

 CONCLUSION
 

 We reverse the trial court’s judgment and render judgment that Darrell Jackson take nothing.
 

 [1]
 

 . Flooding is a method of extracting oil from a deposit after initial oil extraction has been exhausted. Huge amounts of water are injected into oil-bearing deposits, oil is displaced from the rock formations where it otherwise remains, and thus becomes available for extraction. Both fresh water and salt, or brackish, water are suitable for this purpose, but salt water is preferred because it poses fewer environmental concerns, and it is not usable for domestic and agricultural purposes.
 

 [2]
 

 . Despite the similarity between the names of GPWC, Great Plains Water Corp., and Great Plains Water System, Inc., these were independent companies.
 

 [3]
 

 . Accord, Tex.Bus. & Com.Code Ann. § 2.210(b) (Vernon 1994). Although the U.C.C. applies to the sale of goods, not the transfer of business assets as is at issue here, we believe it well illustrates this tenet of assignment law.