**In re TRINITY GAS CORPORATION (REORGANIZED), Debtor.**

**Trinity Gas Corporation (Reorganized), Plaintiff,**

**v.**

**Internal Revenue Service, Sidney W. Sers, Patricia Sers, and Amanda Sers, Defendants.**

**Bankruptcy No. 97–60425–11. Adversary No. 99–6012.**

United States Bankruptcy Court, N.D. Texas, San Angelo Division.

Dec. 22, 1999.

---

Cynthia Messersmith and Ralph F. Shilling, Tax Division, Dept. of Justice, Dallas, TX, for Internal Revenue Service.

Van Oliver, Kirk Kennedy, Andrews & Kurth, L.L.P., Dallas, TX, for Trinity Gas Corporation (Reorganized).

## MEMORANDUM OF OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOHN C. AKARD, Bankruptcy Judge.

The Reorganized Trinity Gas Corporation (Reorganized Trinity) filed the captioned adversary proceeding to have the United States of America through its agency, the Internal Revenue Service (IRS), disgorge a $1M payment made in November 1997 for the 1997 estimated joint income tax liability of Sidney W. Sers and his wife, Patricia Sers. Cross-motions for summary judgment were filed. The court finds that funds paid to the IRS were not property of the bankruptcy estate and thus, the IRS' motion should be granted.[1]

### FACTS

Effective July 9, 1993, Mr. Sers merged Limousines Limited into Trinity Gas Corporation (Trinity USA)[2]. As a result of that merger, Mr. Sers was entitled to receive 18,275,036 shares of stock in Trinity USA. He instructed the transfer agent to issue portions of the stock to family members, including 1,000,000 shares to his daughter Amanda Burton Sers (Amanda) and to issue the balance, approximately 13,000,000 shares, to him. (Government Exhibit 1.) In May 1996, he instructed the transfer agent to convert five certificates from restricted stock to free-trading stock and to reissue the certificates in the name of each of the holders. That list included the 1,000,000 shares in Amanda's name. (Ex. G–2.) The transfer agent complied and the 1,000,000 shares were placed with a securities dealer. The shares were sold during July and August 1997 resulting in proceeds of approximately $4M. (Ex. G–5.)

The proceeds were transferred to Amanda's account at City Bank & Trust Co. in Natchitoches, Louisiana (City Bank). On November 20, 1997, Mr. Sers' wife, Patricia R. Sers (Mrs. Sers), drew a check on Amanda's account at that bank for $1M payable to the IRS. (Ex. G–6.) The check indicated that it was for estimated federal income taxes for the year 1997 for Mr. and Mrs. Sers whose social security numbers were stated on the check. The parties agree that Mr. Sers controlled the sale of the stock from the brokerage account and the distributions from Amanda's account at City Bank. On November 26, 1997 the IRS credited the check to Mr. and Mrs. Sers' account. (Ex. G–7 at 2.)

On December 9, 1997 the United States Securities and Exchange Commission (SEC) filed civil action No. 4–97CV–1018Y in the United States District Court for the Northern District of Texas, Fort Worth Division, against Trinity USA, Mr. and Mrs. Sers, Amanda and other parties (SEC Suit). (Trinity USA's Exhibit 1.) On the same date, the SEC received an injunction against Mr. Sers and Trinity USA. It also received an order freezing Amanda's accounts at the securities broker and at City Bank. (Ex. T–5.) In substance, the SEC's complaint alleged the Mr. Sers sold unregistered securities by providing false and misleading information, thereby defrauding persons who purchased the stock.[3]

By order entered October 27, 1998, this court confirmed the Third Amended Plan of Reorganization submitted by the Official Committee of Equityholders of Trinity Gas Corporation dated July 22, 1998 and filed July 23, 1998 (Plan). (Ex. T–9.) In sub-

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(F).

2. The SEC Suit (hereinafter described) refers to this corporation as Trinity USA. To avoid confusion, this court adopts that designation.

3. Mr. Sers did not comply with a turnover order of the United States District Court. A warrant for his arrest has been issued. Mr. Sers has been in the Republic of Colombia since early 1998.

stance, the plan of reorganization called for the restructuring of Trinity USA into Reorganized Trinity. The shares of Trinity USA held by Mr. Sers and members of his family were canceled. Other shareholders were entitled to elect cash in lieu of their shares (the Cash Out Option) or to exchange their shares of Trinity USA for shares of Reorganized Trinity (the Equity Option). (Plan at art. IV.) Shareholders who elected the Cash Out Option were to receive their proportionate share of the Frozen Funds (the funds on deposit in the United States District Court) when they became available. Those who elected the Equity Option would surrender their shares in Trinity USA and receive shares in Reorganized Trinity, "with the understanding that their Pro Rata Share of the Frozen Funds, if any, will be made available to the Reorganized Company for use in the ordinary course to its future business...."(Plan at ¶ 4.1A.) Shareholders were asked to make the election on their ballot on the Plan. Those who did not vote or who did not make the election on their ballot were given the right to make the election post-confirmation. (Plan at ¶ 4.1D.)

The Plan further provided that each "Shareholder who votes to accept the Plan" is deemed to assign their claims against the officers, shareholders, and directors of Trinity USA, against members of the Sers family, and various other parties to Reorganized Trinity. (Plan at ¶ 4.1A.)

On November 10, 1999 an agreed settlement order was signed in the SEC suit. The parties to that settlement order were the SEC, Trinity USA[4] and parties designated as the Sers Relief Defendants. The Sers Relief Defendants were Mrs. Sers, Amanda and Amanda's brother, Timothy Alan Sers. The order states that pursuant to the Order Appointing Distribution Agent, "Trinity USA will serve as distribution agent for any monies that the Court may hereafter order disgorged to Trinity USA shareholders, including all funds in the Registry of the Court." (Ex. T–7 at 2.) In paragraph six of that order, the Sers Relief Defendants waived or released in favor of and assigned to Trinity USA any claim they might have to the $1M paid to the IRS. (Ex. T–7 at 3.) Paragraph nine of the order provided for the dismissal with prejudice as to the Sers Relief Defendants of adversary proceeding 98–6004 which was pending in this bankruptcy case. (Ex. T–7 at 2, 4.)

The parties agree that the funds on deposit in Amanda's account at City Bank as of the date of the SEC's injunction were ultimately transferred to the Registry of the United States District Court in Fort Worth. Funds from other accounts were also placed into the Registry of the court. By final judgment entered in the SEC Suit on November 23, 1999, various permanent injunctions and disgorgements were ordered against Mr. Sers. (Ex. T–2.) Article IV ordered Mr. Sers to disgorge $11,607,-442 "representing the proceeds paid or attributable to him from the conduct and transactions described in the Commission's complaint." He was also ordered to pay prejudgment interest. In partial satisfaction of Mr. Sers' disgorgement obligation, the funds on deposit in the Registry of the court, being $4,011,358 were ordered to be paid to Reorganized Trinity "pursuant to the Order Appointing Distribution Agent." The order further provided that Mr. Sers was to pay the balance of the restitution to the United States District Clerk who was in turn to pay it to Reorganized Trinity pursuant to the Order Appointing Distribution Agent. (Ex. T–2 at 3–4.)

The parties do not dispute the facts. They disagree on the application of the law to those facts. Consequently, summary judgment is appropriate in this matter. FED.R.CIV.P. 56(c) made applicable to bankruptcy proceedings by FED. R.BANKR.P. 7056.

---

4. Because of the confirmation of the plan of reorganization, Reorganized Trinity succeeded to the rights of Trinity USA in the SEC Suit.

This adversary proceeding was filed June 21, 1999. Although Mr. and Mrs. Sers and Amanda were named defendants, they were not served with a summons and notice of trial. By separate order, the court will dismiss them from this adversary proceeding.

## ISSUES

Basically Reorganized Trinity asserts three grounds in seeking to recover the $1M:

a. Had the $1M remained in Amanda's bank account at City Bank, it would have been transferred, along with the other monies in that account, to the Registry of the United States District Court in Fort Worth and, subsequently, to Reorganized Trinity pursuant to the District Court's November 23, 1999 final judgment. Reorganized Trinity therefore asserts that it is entitled to use the avoiding powers granted to a trustee-in-bankruptcy to cause the IRS to disgorge those funds.

b. Because, as part of the plan of reorganization, the shareholders assigned their claims against Mr. Sers to Reorganized Trinity, it is able to use the trustee-in-bankruptcy's avoiding powers to cause the IRS to disgorge those funds.

c. Reorganized Trinity is entitled to offset the claim of the IRS in the bankruptcy case against the $1M.

The IRS points out that the avoiding powers of a trustee-in-bankruptcy are only available with respect to property of the bankruptcy estate. It asserts that the funds in question were not property of Trinity USA. Thus, they cannot be considered property of the bankruptcy estate.

## DISCUSSION

### New Entity

■ Central to this matter is an understanding of basic bankruptcy law. In order to prevent what is commonly referred to as the race of creditors, a trustee-in-bankruptcy is given certain powers to avoid prepetition transfers of assets belonging to the debtor. 11 U.S.C. § 544.[5] The object is to prevent a few creditors from gobbling up all of the assets to the detriment of the larger creditor body and to promote the equitable distribution of the assets as provided by the Bankruptcy Code. §§ 507 and 726. Thus, a trustee-in-bankruptcy can recover assets for the benefit of the general creditor body which the debtor improperly transferred prior to the filing of the bankruptcy petition. When a corporation files for reorganization under Chapter 11 of the Bankruptcy Code, it becomes a debtor-in-possession. Section 1107(a) gives a debtor-in-possession the rights, duties and obligations of a trustee-in-bankruptcy, including the avoiding powers. When a Chapter 11 plan is confirmed, all of the property of the bankruptcy estate vests in the reorganized debtor. § 1141(b). The plan may provide that the reorganized debtor retains the avoidance powers which were possessed by the debtor-in-possession. However, the reorganized debtor is, basically, a new entity and is free from court control except as is necessary to resolve matters which occurred prior to or during the administration of the bankruptcy case. See DAVID G. EPSTEIN ET AL., 3 BANKRUPTCY at § 10–32 (West 1992) (stating that "[l]ike the mother of a growing child, the court continues to supervise the (reorganized) debtor and has limited, though decreasing power to adjust, modify or give orders with respect to the plan and the (reorganized) debtor's behavior. As time passes, both the court's interest in doing so and its right to interfere gradually diminish.") Id.

### Property of the Estate

■ The commencement of a bankruptcy case creates an estate which comprises

5. The Bankruptcy Code is 11 U.S.C. § 101 *et seq*. References to section numbers are references to sections in the Bankruptcy Code.

all legal or equitable interests of the debtor in property as of the date of filing. § 541(a)(1). The trustee (and thus the debtor-in-possession in the Chapter 11 case) may avoid any transfer "of an interest of the debtor in property" that was made within one year before the date of the filing of the petition, subject to certain limitations. § 548(a)(1). In order to avail itself of this recovery power, Reorganized Trinity must show that when the $1M at issue was transferred to the IRS, it was property belonging to Trinity USA. It failed to do so.

The source of the $1M paid to the IRS was stock which Mr. Sers gave to Amanda in 1993. The fact that it underwent a change from restricted to free-trading stock in 1996 did not change its ownership. The stock was sold and the funds were placed in Amanda's bank account. Subsequently, $1M from the proceeds of that stock was used to make a tax deposit for Mr. and Mrs. Sers. At no time did Trinity USA own the stock. Thus, the basic requirement of § 548 that the transfer be of "property of the debtor" was not met and Trinity USA has no basis for an avoidance action under § 548.

The result would be the same if the court should determine that Mr. Sers placed the stock in his daughter's name as a matter of convenience and he remained the beneficial owner. If Mr. Sers was the beneficial owner, the stock was not property of Trinity USA and Trinity USA would have no basis for an action under § 548. Any action the shareholders may have as a result of fraud by Mr. Sers would not confer avoiding powers on Trinity USA, as more fully set forth below.

▮▮▮▮ Reorganized Trinity argues that the funds in Amanda's bank account at City Bank, along with other funds, were placed in the Registry of the United States District Court and, by the United States District Court's final judgment of November 23, 1999, ordered paid to Reorganized Trinity.[6] It argues that because of the transfer of the Registry funds to it, Reorganized Trinity can exercise § 548 avoiding powers with respect to the $1M. This argument must fail for two reasons:

1. The § 548 avoiding powers permit the avoidance of a transfer of property of "the debtor." Reorganized Trinity is neither a "debtor" nor a "debtor-in-possession." It acquired the property during its postconfirmation transactions. It does not possess the powers of a trustee-in-bankruptcy with respect to property acquired postconfirmation.

2. To say that Reorganized Trinity acquired the funds from the Registry of the court is an oversimplification. Both the agreed settlement order entered November 12, 1999 and the district court's final judgment of November 23, 1999 clearly show that Reorganized Trinity is to serve as "a distribution agent for any monies that the Court may hereafter order disgorged to Trinity USA shareholders, including all funds in the Registry of the Court." (Ex. T–7 at 2.) The shareholders who elected the Equity Option assigned their rights in those funds to Reorganized Trinity, but the shareholders who elected the Cash Out Option did not. (Plan at ¶ 4.1A.) Reorganized Trinity is a disbursing agent to distribute those funds to the defrauded shareholders or to whomever the defrauded shareholders assigned their rights to those funds. Thus, some of the funds must be paid to the defrauded shareholders and Reorganized Trinity will receive the funds attributable to the shareholders who assigned those funds to it. The fact that Reorganized Trinity received an assignment of funds which were formerly in the Registry of the United

---

**6.** The United States District Court's final judgment refers to Trinity USA, but Reorganized Trinity had succeeded to the rights of Trinity USA.

States District Court did not confer on Reorganized Trinity any Bankruptcy Code avoiding powers. The Plan provided that the funds assigned to Reorganized Trinity would "be made available to the Reorganized Company for use in the ordinary course of its future business." (Plan at ¶ 4.1A.) The fact that Reorganized Trinity can use those funds in its normal business operations does not confer on Reorganized Trinity any Bankruptcy Code avoiding powers.

## Assignment of Claims

■ Reorganized Trinity argues that as a part of the confirmed plan of reorganization, it received an assignment of the defrauded shareholders' claims against Mr. Sers. The plan of reorganization provides that each "Shareholder who votes to accept the Plan" is deemed to have assigned his/her claims to Reorganized Trinity. (Plan at ¶ 4.1A.) Other shareholders may have assigned their claims to Reorganized Trinity. However, under the terms of the Plan, not all of the shareholder claims were assigned to Reorganized Trinity. The fact that Reorganized Trinity received an assignment of some (or most or all) of the shareholders' claims against Mr. Sers does not give it any Bankruptcy Code avoiding powers against the IRS. The defrauded shareholders were not in bankruptcy so they had no bankruptcy rights to assign to Reorganized Trinity. The shareholders cannot assign more than they have; Reorganized Trinity stands in their shoes. Additional rights are not created by an assignment. *United States v. $22,-640.00 in United States Currency*, 615 F.2d 356, 360 (5th Cir.1980). *See also Capitan Enter., Inc. v. Jackson*, 903 S.W.2d 772, 776 (Tex.App.—El Paso 1994, writ denied). Further, the assignment was made to Reorganized Trinity and, as noted above, Reorganized Trinity has no Bankruptcy Code avoiding powers (except those possessed by Trinity USA and assigned to Reorganized Trinity in the Plan).

In its brief, Reorganized Trinity confuses the issue by consistently referring to the rights of "Trinity and its shareholders." Reorganized Trinity and the shareholders of the former Trinity USA have distinctly separate rights. Care must be exercised not to confuse those rights, especially where the shareholders assigned their rights to Reorganized Trinity.

## Turnover

■ Reorganized Trinity seeks to have the IRS turn over the $1M under § 542(a). That section provides that an entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease ..." shall deliver the property to the trustee. It notes that under § 541(a)(1), (3), (7) property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," property the trustee recovers under the avoiding powers, § 541(a)(3); and any "interest in property that the **estate** acquires after the commencement of the case" (emphasis added). Reorganized Trinity bases its argument on the fact that the Plan assigned to it the claims of the Trinity USA shareholders against Mr. Sers. Those claims were assigned to Reorganized Trinity; they were not assigned to the bankruptcy **estate** of Trinity USA. Thus there is no property of the **estate** involved, and no property that a trustee-in-bankruptcy could use, sell, or lease.

■ Further, § 541(a)(7) should not be read to allow a trustee (or debtor-in-possession) to acquire the claims of third parties and then use the Bankruptcy Code avoiding powers to enforce those claims. As previously noted, the trustee (as assignee) has no greater rights than the assignor had. Trustees are permitted to operate the business of the debtor. Thus, the obvious purpose of § 541(a)(7) is to include property and rights which are acquired in the **estate's** normal course of business in property of the estate.

Reorganized Trinity argues that it may pursue the corporation's rights of action against a stockholder, officer, or director, including a shareholder derivative action. Perhaps so, but that right does not give it the right to pursue parties who dealt with a corporate officer.

## Setoff

■ Reorganized Trinity seeks to set off the taxes which it owes to the IRS against the tax deposit. In order for set-off to be permitted under § 553, the parties must owe obligations to each other. In this case, mutuality is lacking. The deposit was for the taxes of Mr. and Mrs. Sers. The tax claim is against Trinity USA, and is thus an obligation of Reorganized Trinity. Setoff cannot be permitted.

## Equitable Arguments

■ Finally, Reorganized Trinity argues that it is not fair for the IRS to get a tax deposit for Mr. and Mrs. Sers when Mr. Sers defrauded numerous shareholders. It asks the court to use its powers under § 105(a) and as a court of equity to require the IRS to disgorge the $1M. Reorganized Trinity requests this court to create a new substantive right. Bankruptcy courts' equitable powers are limited to implementing the provisions of the Bankruptcy Code. This court cannot create new substantive rights; that is the exclusive province of Congress.

While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.

*United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (footnotes omitted).

Persons who commit fraud typically use the proceeds of that fraud for their own benefit. They purchase things from or pay monies to third parties who did not participate in the fraud. In this case, apparently some of the money from defrauded stockholders was paid to the IRS on Mr. and Mrs. Sers' tax obligations. There is no hint that the IRS assisted in defrauding the stockholders. Consequently, the court must leave the parties where the court finds them. It would be ridiculous to attempt to set aside every payment made by Mr. Sers to innocent third parties on the basis that the funds he used were procured from stockholders by fraud. The United States District Court granted a substantial judgment against Mr. Sers. A portion of that judgment was paid by the funds which had been placed into the Registry of the United States District Court. The defrauded stockholders must look to the collection of that judgment as the source of funds from which to recover their losses. Although recovery under that judgment may be difficult because Mr. Sers is in the Republic of Colombia, the fact that collection from Mr. Sers may be difficult is no reason to extract funds from the innocent third parties.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by the IRS will be granted and the motion for summary judgment filed by Reorganized Trinity will be denied.

## POSTSCRIPT

■ Subsequent to the hearing on the motions for summary judgment, Reorganized Trinity filed an emergency motion for leave to amend its complaint. Reorganized Trinity sought to amend its complaint by the addition of a count under § 544(b). Under that section, "the trustee may avoid any transfer of an interest of the debtor in property or an obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim.…" Reorganized Trinity asserts that the change of Amanda's

stock from restricted to unrestricted in May 1996 was such a transfer. (Ex. G–2.) This argument ignores the basic fact that the stock in question was Amanda's stock; it was not property of the debtor (Trinity USA). A transfer of Amanda's stock neither adds to nor takes away from the assets of the corporation. There was no "transfer of an interest of the debtor in property."

At the hearing on the motions for summary judgment, the attorney for Reorganized Trinity asserted that the issuance of unrestricted stock to Amanda in 1996 was a new issuance of stock. He pointed to the fact that different transfer agents were used when Amanda acquired the stock in 1993 (Ex. G–1) and when she was issued the unrestricted stock in 1996. (Ex. G–2.) This ignores the plain language of the 1996 letter which asks that the agent "convert" the shares to unrestricted shares. Further, the fact that Trinity USA apparently changed transfer agents does change the ownership of the stock.

Assuming, arguendo, that the 1996 issuance of unrestricted stock to Amanda is the issuance of new stock, how is that a transfer of property of the debtor? The issuance of stock by a corporation does not dilute the property of the corporation. There are now more certificates of ownership, but the corporate property remains the same; there was no transfer of corporate property. For these reasons, the motion to amend will be denied.

JUDGMENT ACCORDINGLY.[7]

---

7. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Fᴇᴅ.R.Bᴀɴᴋʀ.P. 7052 which is made applicable to Contested Matters by Fᴇᴅ.R.Bᴀɴᴋʀ.P. 9014. This Memorandum will be published.