ACCEPTED
03-16-00621-CV
13888460
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/18/2016 6:44:16 PM
JEFFREY D. KYLE
CLERK

NO. 03-16-00621-CV

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/18/2016 6:44:16 PM
JEFFREY D. KYLE
Clerk

TOLL AUSTIN TX, LLC
*Appellant*

v.

BRENT DUSING AND ELIZABETH DUSING
*Appellees*

_____

On Appeal from the 353rd Judicial District Court
Travis County, Texas
Cause No. D-1-GN-16-002196

_____

**APPELLANT'S RESPONSE TO APPELLEES' BRIEF ON THE MERITS**
_____

Thomas R. Stauch;
tstauch@ns-law.net
State Bar No. 00794687

Mark C. Roberts II
mroberts@ns-law.net
State Bar No. 00788293

NOWAK & STAUCH, LLP
10000 North Central Expressway, Suite 1040
Dallas, Texas 75231
Telephone:    (214) 823-2006
Facsimile:    (214) 823-2007

Attorneys for Appellant

NO. 03-16-00621-CV

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

_____

TOLL AUSTIN TX, LLC
*Appellant*

v.

BRENT DUSING AND ELIZABETH DUSING
*Appellees*

_____

On Appeal from the 353rd Judicial District Court
Travis County, Texas
Cause No. D-1-GN-16-002196

_____

**APPELLANT'S REPLY TO APPELLEES' BRIEF ON THE MERITS**

_____

**TO THE HONORABLE THIRD COURT OF APPEALS:**

**COMES NOW**, Toll Austin TX, LLC ("Toll") in the above-styled numbered cause, and files its Reply to Appellees' Brief on the Merits, and in support thereof shows the Court the following:

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES**..................................................................................**iv**

**REPLY TO APPELLEES' ISSUE NO. 1**......................................................**1**

**REPLY TO APPELLEES' ISSUE NO. 2**......................................................**3**

**REPLY TO APPELLEES' ISSUE NO. 3**......................................................**7**

**PRAYER** ........................................................................................................**14**

**CERTIFICATE OF SERVICE** ...................................................................**15**

**CERTIFICATE OF COMPLIANCE** ..........................................................**16**

**APPENDIX** ....................................................................................................**17**

# INDEX OF AUTHORITIES

**Cases**

*Bonded Builders Home Warranty Association of Texas v. Rockoff*, 2016 WL 3383461 (Tex.App.—El Paso 2016, no pet.)..........................................................................6

*Capitan Enters., Inc. v. Jackson*, 903 S.W.2d 772 (Tex.App.—El Paso, writ denied) 6

*Carlin v. 3V Inc.*, 928 S.W.2d 291 (Tex.App.—Houston [14th Dist.] 1996 no pet.) ........................................................................................................................ 10, 11

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014)................................................................................................................11

*Creative Artists Agency, LLC v. Las Palmas Race Part, LLC*, 2015 WL 6652655 (Tex.App.—Corpus Christi 2015)..................................................................7

*Greenberg Traurig, LLP v. National American Ins. Co.*, 448 SW.3d 115 (Houston [14th Dist.] 2014, no pet.)................................................................... 10, 11

*In re Koch Indus.*, 49 S.W3d 439 (Tex.App.—San Antonio 2001, org. proceeding) ..6

*In re Weekley Homes, L.P.,* 180 S.W.3d 127 (Tex. 2005)........................................7

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986).............................12

*LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234 (Tex. 2014)...................12

*Merrill Lynch v. Eddings*, 838 S.W.2d 874 (Tex.App.—Waco 1992, no writ) (emphasis added) ............................................................................. 10, 11

*Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830 (Tex.App.—Houston [1st Dist.] 2002, no pet.)..........................................................................................6

*NextEra Retail of Tex., LP v. Investors Warranty of Am., Inc.,* 418 S.W.3d 222 (Tex.App.—Houston [1st Dist] 2013, pet. denied)...............................................8

*Proctor v. Foxmeyer Drug Co.*, 884 S.W.2d 853 (Tex.App.—Dallas 1994, no writ) ............................................................................................................. 3, 4, 5

*Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432 (Tex.App.—Dallas 1988, no writ) ..........................................................................................6

*Thompson v. North Tex. Nat'l Bank,* 37 S.W.2d 735 (Tex. Comm'n.App. 1931, holding approved)..........................................................................................4

*Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511 (Tex.App.—Houston [1st Dist.] 2002, no pet.) ..........................................................1

**Rules**

TEX. CIV. PRAC. & REM. CODE §171.021(a)..................................................................1

Tex. Civ. Prac. & Rem. Code §171.025 ................................................................13

iv

# REPLY TO APPELLEES' ISSUE NO. 1

Issue No. 1 of Appellees' Brief contends that this Court should dismiss the instant appeal for lack of subject matter jurisdiction because the Trial Court's Order is an unappealable interlocutory order. [Appellees' Brief at 16]. According to the Dusings, Toll's Plea in Abatement did not constitute a motion to compel arbitration because it only requested that the case be stayed in favor of arbitration instead of also requesting that arbitration be compelled. The Dusings contend that, without a request for an order compelling arbitration, there is no subject matter jurisdiction under *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511 (Tex.App.—Houston [1st Dist.] 2002, no pet.). The Dusings are incorrect because Toll's Plea in Abatement was timely filed and specifically requested that arbitration be ordered.

Toll's Plea in Abatement stated:

> Pursuant to Section 171.021 of the TEXAS CIVIL PRACTICE & REMEDIES CODE, upon the showing of an agreement to arbitrate between these parties, *the Court is required to order the parties to arbitrate*. TEX. CIV. PRAC. & REM. CODE §171.021(a). All of Plaintiffs' claims against Toll Dallas (or Toll Austin) arise solely from either the Agreement of Sale or the Warranty. The Agreement of Sale and the Warranty contain valid and enforceable arbitration clauses. Accordingly, pursuant to §171.021(a) of the TEXAS CIVIL PRACTICE & REMEDIES CODE, Toll Austin respectfully requests that the Court abate these proceedings in favor of arbitration in accordance with the express terms of the Agreement of Sale and the Warranty.

[CR 12](emphasis added).

1

In addition to this request, Toll filed a Brief in Support of Plea in Abatement, which stated:

> Toll has filed a verified Plea in Abatement and has *moved the Court to compel arbitration* based upon the arbitration clause contained in the both the Agreement of Sale and Home Builder's Limited Warranty….

[CR 79](emphasis added).

In response, the Dusings filed a Response to the Plea in the Abatement, in which they twice argued against enforcement of the arbitration provision. The Dusings' Response stated: "The Defendants could not enforce the agreement or compel arbitration" and "…Plaintiffs contend that the Defendant's (sic) arbitration provision (Article 11) does not constitute a valid agreement with Plaintiffs, and as such, should not be enforced." [CR 69].

Toll properly pleaded that it was seeking to compel arbitration in its Plea in Abatement; Toll's Brief in Support of it Plea in Abatement expressly stated that Toll was seeking to compel arbitration; and the Dusings' Response argued against Toll's effort to compel arbitration. Clearly, the Dusings understood Toll's Plea in Abatement sought to compel arbitration because their Response argued against it. [CR 69]. Thus, Appellees' argument that there was no motion to compel arbitration is rather disingenuous, and wholly without merit.

## REPLY TO APPELLEES' ISSUE NO. 2

**The Dusings are the successors in interest.**  Issue No. 2(A) of the Dusings' Brief asserts that Toll is improperly applying the "boilerplate" contract term of "successor."  [Appellees' Brief at 18].  Relying on *Proctor v. Foxmeyer Drug Co.*, 884 S.W.2d 853 (Tex.App.—Dallas 1994, no writ), the Dusings make a seemingly contradictory argument with respect to the term "successor."   On one hand, they argue that the term "successor" ordinarily applies to corporate entities.  [Appellees' Brief at 18].   Later, they quote *Proctor* as support for their argument that "that the definition of successor when applied to individuals is 'intended to designate those to whom property descended through [a] deceased natural-person party to [an] agreement and extended perpetually to… descendants.'"[1]  [Appellees' Brief at 19].  There are several reasons why the Dusings' analysis is flawed.

First, the provision cited by the Dusings actually states that the agreement "shall be binding upon the <u>respective</u> heirs <u>and</u> successors of the parties."  [CR22](emphasis added).  If one substitutes the Dusings' interpretation of the term "successor," this phrase would read that the agreement "shall be binding upon the

---

[1] Toll recognizes this quotation from *Proctor*, as edited by the Dusings, is awkwardly worded.  Nevertheless, Toll is providing the edited quotation as it is worded in Appellees' Brief.  Moreover, the jump page provided in Appellees' Brief is incorrect.  The full, unedited quotation from *Proctor* is actually: "We further conclude that the term 'successor' was intended to designate those to whom property descended through a deceased natural-person party to this agreement.   The option in Paragraph 6.9, therefore, extends perpetually to appellant's descendants and is unlimited in duration." *Proctor*, 884 S.W.2d at 861.

3

respective heirs and ones whom property descended through." The term "heir" is the functional equivalent of the term "one whom property descended through." Thus, they are interchangeable and when one makes this equivalent substitution, the phrase would functionally become: "the agreement shall be binding upon the respective heirs and heirs of the parties." Because such an interpretation would be illogical, the term "successor" simply cannot mean what the Dusings assert it means.

Second, the only case that the Dusings rely on actually supports Toll's position. In *Proctor,* the Dallas Court of Appeals held, "[t]he exact meaning of the word 'successor' when used in a contract depends largely on the kind and character of the contract, its purposes and circumstances, and the context." *Proctor*, 884 S.W.2d at 861 *citing Thompson v. North Tex. Nat'l Bank,* 37 S.W.2d 735, 739 (Tex. Comm'n. App. 1931, holding approved). Under the character, purpose, circumstances, and context of the Agreement of Sale between Toll and Pool, the term "successor" clearly applies to the Dusings. The Agreement of Sale references "heirs," "successors," "buyer," and "permanent residents of the Premises" at various points. [CR 21, 22]. Thus, the context, character, and purpose of the Agreement of Sale make clear that it was intended to provide for the resolution of all disputes between Toll and its customer, or anyone who might later acquire an ownership interest in the home. [CR 21, 22 at Articles 11 and 15(d)]. It is

4

undisputed that the Dusings purchased the home from Pool, who purchased the home from Toll. [CR 4, 11 – 12]. Clearly, the Dusings are the "successor" homeowner, and the successors in interest to the property in question. This is the definition of vertical privity, and the Dusings cannot escape this vertical privity by seeking to deny the provisions of the Agreement of Sale for their convenience.

Third, to the extent the Dusings contend that *Proctor* stands for the proposition that the term "successor" only applies to corporations, the Dusings are misinterpreting *Proctor*. A careful reading of *Proctor* reveals that, in the context of the contract at issue in that case, "the term 'successor' was also intended to apply to the *natural-person* parties of the agreement." *Proctor*, 884 S.W.2d at 861 (emphasis in original). Thus, the very case the Dusings' rely upon does not stand for the proposition that "successors" can only refer to corporate entities.

**The Dusings, as successors in interest, acquired no more rights than Mr. Pool enjoyed as their predecessor in interest.** In Issue No. 2(B), the Dusings attempt to distinguish Toll's cases on the basis that they involve either corporate entities or involve assignments. [Appellees' Brief at 21]. This attempt at distinguishment is misplaced for two reasons. First, as discussed immediately above, the term "successor" has never been, and is not here, limited to corporate entities. *Id.*

Second, the cases cited by Toll stand for the proposition that one who steps into the shoes of a predecessor, takes only those rights which the predecessor had. To demonstrate the broad expanse of this well-recognized legal principal, Toll cited cases where it has been applied in a wide range of contexts, including "[a]ssignees, third party beneficiaries, and successors," *see Bonded Builders Home Warranty Association of Texas v. Rockoff*, 2016 WL 3383461 *7 (Tex.App.—El Paso 2016, no pet.)(citations omitted)(emphasis added)), and also in the context of a "successor-in-interest." (*Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex.App.—Houston [1st Dist.] 2002, no pet.) citing *Capitan Enters., Inc. v. Jackson*, 903 S.W.2d 772, 775 (Tex.App.—El Paso, writ denied)). Toll has further demonstrated that a party assuming contractual liability is liable to same extent as the party from which it assumed the contract, (*In re Koch Indus.*, 49 S.W3d 439, 447 (Tex.App.—San Antonio 2001, org. proceeding)), and that Texas law holds, "the beneficiary for whose advantage a contract is made cannot acquire a better standing to enforce the contract than that occupied by the contracting party itself." *Stonewall Ins. Co. v. Modern Exploration, Inc.,* 757 S.W.2d 432, 435 (Tex.App.—Dallas 1988, no writ).

The unmistakable point that the foregoing cases collectively make is that when one steps into the shoes of another, one acquires the rights owned by one's predecessor, and only those rights. Despite the Dusings' attempt to artfully plead

6

around the binding arbitration clause, the fact remains that all of their causes of action are based on Toll's alleged defective design and construction and performance of the home. Toll's liability for such design or construction arises only from the Agreement of Sale and the Warranty (which expressly disclaims any implied warranties). [CR 20 at Article 10]. Since both the Agreement of Sale and Warranty require arbitration of claims related to the design, construction or performance of the home, it is clear that Pool could not have avoided arbitration if he had brought these same claims against Toll. As a matter of law, therefore, the Dusings' purchase of the home from Pool cannot, and did not, confer on the Dusings any different (or greater) rights than Pool would have had concerning the assertion of these same claims against Toll. Like Pool, therefore, the Dusings are bound by the arbitration provisions as a matter of law.

## REPLY TO APPELLEES' ISSUE NO. 3

In Issue No. 3 of Appellees' Brief, the Dusings contend they did not assume the Agreement of Sale and are not claiming a direct benefit of the Agreement of Sale. [Appellees' Brief at 23]. The Dusings therefore assert that, as non-signatories to the Agreement of Sale, they are not bound to arbitration provision of the Agreement of Sale. The Dusings then attempt to distinguish the cases Toll relied upon to refute this notion. As set forth below, the Dusings' analysis misses the mark.

7

**The Dusings are Bound under the Assumption Exception that Binds Non-Signatories to the Arbitration Agreements.** Toll cited *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex.2005) and *Creative Artists Agency, LLC v. Las Palmas Race Part, LLC*, 2015 WL 6652655 *3-4 (Tex.App.—Corpus Christi 2015) for the proposition that the Dusings are bound by the terms of the arbitration provisions set forth in the Agreement of Sale and Warranty under the "assumption" exception that binds non-signatories to arbitration agreements. The Dusings attempt to distinguish both of these on the basis that they involve corporate entities and a written assignment.

As discussed above, the discussion of corporate entities versus individuals in the context of being "successors" under the Agreement of Sale is a distinction without difference. As for the issue of a written assignment, the Dusings <u>did</u> receive a written assignment when they purchased the home from Pool. As set forth in the Warranty Deed from Pool to the Dusings dated February 2, 2015, Pool as grantor assigned his right, title and interest in the property to the Dusings as follows:

> Grantor for the Consideration… grants, sells, and conveys to Grantee the Property, together will all and singular rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's <u>heirs, successors, and assigns</u> forever.[2]

---

[2] See Warranty Deed with Vendor's Lien in attached Appendix hereto. (Emphasis added). While this Warranty Deed was not part of the Trial Court's Record, its absence is due to the fact that the Dusings failed to produce any evidence at the Trial Court, and Toll could not

Thus, when the Dusings took the home along with all "rights and appurtenances thereto" for themselves and for their "heirs, successors, and assigns," they were taking an assignment of the bundle of rights that Pool had to give, including those arising under the Agreement of Sale and Warranty. This transfer created the vertical privity between Toll and the Dusings that made the Dusings the "successors" to Pool, who are therefore bound to the arbitration provisions in the Agreement of Sale and the Warranty.

Even without this assignment in the Warranty Deed, the Dusings still impliedly assumed the Agreement of Sale and the Warranty. The Dusings' lawsuit against Toll claims a breach of duties by Toll that <u>only</u> arise from the Agreement of Sale or the Warranty as a matter of law. "An implied assumption of contractual obligations may arise 'when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched.'" *Creative Artists Agency, LLC v. Las Palmas Race Part, LLC*, 2015 WL 6652655 *3-4 (Tex.App.—Corpus Christi 2015) quoting *NextEra Retail of Tex., LP v. Investors Warranty of Am., Inc.,* 418 S.W.3d 222, 227-228 (Tex.App.—

have reasonably foreseen the Dusings would deny their standing in the chain of title as an assignee of Pool's rights. As such, the Dusings should be barred from raising this issue herein. Moreover, this Court may also take judicial notice of the Warranty Deed which is filed as Document Number 2015017005 in the Deed Records of Travis County, Texas.

9

Houston [1st Dist] 2013, pet. denied). Simply put, without the Agreement of Sale, there would have been no construction of the home and the Warranty expressly states that Toll's <u>duty</u> to Pool (and his successors) after closing are governed by solely by the Warranty. [CR 20 at Article 10]. Any suit for defects in the home must, therefore, be subject to all of the provisions of the Agreement of Sale and Warranty, including the arbitration provision.

**Equitable Estoppel and Direct Benefits.** The Dusings continue to resist the authority cited by Toll on the equitable estoppel/direct benefits exception to the non-signatory exemption on the basis that Toll's cases involve corporate entities or an express assignment. [Appellees' Brief at 27]. Because those issues are briefed above, Toll will not brief the issues again here. However, the Dusings also attempt to avoid application of the equitable estoppel/direct benefits exception by claiming that their causes of action sound in tort rather than in contract. As such, the Dusings assert they are not claiming benefits under the Agreement of Sale or the Warranty at all. [Appellees' Brief at 27] This argument was flatly rejected in *Weekley Homes* which states: "[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on <u>the substance of the claim, not artful pleading</u>." *Weekley Homes,* 180 S.W.3d at 131–32 (emphasis added).

Although the Dusings have carefully attempted to avoid suing Toll for breach of contract or breach of warranty, all of their claims arise from Toll's alleged failure

10

to "properly design and construct the foundation, French drainage system, and waterproofing" of the home. [CR 5-6]. Any duty to properly design or construct the home arose <u>only</u> from the Agreement of Sale, and any duty to remedy such defects arises <u>only</u> from the Warranty. Thus, despite their artful pleadings, any cause of action asserted by the Dusings against Toll related to the construction of the home are expressly covered by the arbitration provision set forth in the Agreement of Sale. In fact, the arbitration clause in the Agreement of Sale even contemplates the inclusion of tort claims in the requirement to arbitrate:

> Buyer, on behalf of Buyer and all permanent residents of the Premises, including minor children, hereby agree that any and all disputes with Seller, Seller's parent company or their subsidiaries or affiliates arising out of the Premises, this Agreement, the Home Warranty, any other agreements, communications or dealings involving Buyer, or the construction or condition of the Premises including, but not limited to, disputes concerning breach of contract, express or implied warranties, fraud, misrepresentation, personal injuries and/or illness, mold-related claims, representations and/or omission by Seller, on-site and off-site conditions and all other torts and statutory causes of action, including but not limited to those arising or administered under the Deceptive Trade Practices Act (DTPA), Residential Construction Liability Act (RCLA) or Texas Residential Construction Commissions Act (TRRCA)(the "Claims") shall be resolved by binding arbitration…

[CR 21]. Based on this language, and despite the Dusings' attempt to artfully plead their claims to avoid arbitration, it is clear that the Dusings' claims against Toll must be arbitrated.

Indeed, in *Carlin v. 3V,* the Fourteenth Court of Appeals compelled arbitration because 3V "based its entire case on the rights it acquired from the

11

[Carlin and SIGMA] agreement and <u>would have no case if it did not exist</u>." *Carlin v. 3V Inc.*, 928 S.W.2d 291, 295 (Tex.App.—Houston [14th Dist.] 1996 no pet.). Similarly, in *Merrill Lynch v. Eddings,* the Tenth Court of Appeals compelled arbitration because the "underlying basis for all of the claims" and the beneficiaries "<u>would have no claims had the account agreement never been signed by the trustee</u>." *Merrill Lynch v. Eddings*, 838 S.W.2d 874, 879 (Tex.App.—Waco 1992, no writ) (emphasis added). Here, the Dusings' claims are likewise derivative of the original contractual relationship between Toll and Pool. In *Greenberg Traurig, LLP, v. National American Ins. Co.*, the Fourteenth Court of Appeals compelled arbitration because:

> Okie's claims are based on the retainer agreement…. Each claim that Okie asserts—negligence, malpractice, and breach of fiduciary duty— is based on Greenberg's legal representation of Okie, which arises out of the agreement…. Because Okie insists that Greenberg violated various duties owed to Okie as a client, it cannot avoid the arbitration provision in the agreement providing for Okie's legal representation.

*Greenberg Traurig, LLP v. National American Ins. Co.*, 448 SW.3d 115, 121 (Houston [14th Dist.] 2014, no pet.). In the present case, it is clear that <u>but for</u> the Agreement of Sale between Toll and Pool, the home in question would never have been constructed and warranted by Toll. Accordingly, despite their counsel's clever attempts to avoid asserting contractual claims, all of the Dusings' alleged claims arise from, and are inextricably tied to (and bound by) the Agreement of Sale and the Warranty. As was the result in *Carlin v. 3V,*

12

*Eddings,* and *Greenberg Traurig, LLP, v. National American Ins. Co.,* arbitration of the Dusings' claims against Toll should be compelled.

**The Economic Loss Rule precludes the Dusings' tort claims.** The Dusings' contention the economic loss rule's bar of tort claims would not apply in this case is misplaced. The contention relies solely upon *Chapman Custom Homes, Inc. v. Dallas Plumbing Co*., 445 S.W.3d 716 (Tex. 2014), the facts of which are distinguishable and thus rendering the opinion irrelevant and unable to alter the proper result in this case.

*Dallas Plumbing* involved a plumbing subcontractor who contracted with the general contractor to install plumbing in the construction of a new home. *Id.* at 717. Thus, the relevant contract in that case was a subcontract for installation of the plumbing within the home rather than the builder's contract with the buyer for the construction of the entire home. When flooding occurred due to a plumbing defect, the damage exceeded the scope of the applicable plumbing subcontract because damage was done to the structure of the home. *Id.* Thus, the Texas Supreme Court held that the economic loss rule did not apply because "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Dallas Plumbing*, 445 S.W.3d at 718. The Court noted that the "damages allegedly caused by the breach of [the] duty extend beyond the

13

economic loss of any anticipated benefit under the *plumbing contract*." *Id.* (emphasis added).

In the Dusings' case, the subject of the Agreement of Sale was the construction, sale and warranty of the <u>entire home</u>. Thus, every complaint and all damages claimed by the Dusings in this case are associated with the economic loss of the original contractual expectancy under the Agreement of Sale. Under *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234 (Tex.2014) and *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986), the economic loss rule would indeed bar any tort claims by the Dusings. Any potential recovery of damages by the Dusings, even if currently couched as a tort claim, is therefore governed by the contractual limitations in the Agreement of Sale. The equitable estoppel and direct benefits exception applies and requires arbitration of the Dusings' claims because all of the Dusings' claims against Toll, to the extent they are viable, must rise or fall under the duties created in the Agreement of Sale and the Warranty.

## **PRAYER**

**FOR THESE REASONS**, Toll requests this Court find that the Trial Court erred in denying Toll's Plea in Abatement. Toll further requests this Court reverse the Trial Court's denial of the Plea in Abatement; render an Order granting the Plea in Abatement and ordering the Dusings' to arbitrate their claims with Toll;

14

and stay the underlying proceedings in the Trial Court under Tex. Civ. Prac. & Rem. Code §171.025 until an award is rendered in arbitration as appropriate. Toll seeks such other and further relief, including is reasonable and necessary attorney fees and costs of appeal, to which it may be justly entitled.

Respectfully submitted,

**NOWAK & STAUCH, LLP**

/s/ Thomas R. Stauch
Thomas R. Stauch
tstauch@ns-law.net
State Bar No. 00794687
Mark C. Roberts II
mroberts@ns-law.net
State Bar No. 00788293

10000 North Central Expressway, Suite 1040
Dallas, Texas 75231
Telephone:  (214) 823-2006
Facsimile:   (214) 823-2007

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in accordance with TEXAS RULES OF CIVIL PROCEDURE 21 and 21a on all parties to this case on this the 18th day of November, 2016.

/s/ Mark C. Roberts II
Mark C. Roberts II

15

## CERTIFICATE OF COMPLIANCE

I certify that Appellant's Response to Appellees' Brief on the Merits is in compliance with to Texas Rule of Appellate Procedure 9.4(i) as it contains 3,376 words in the document.

<div align="center" style="margin-left:50%">

___/s/ Mark C. Roberts II_____
Mark C. Roberts II

</div>

NO. 03-16-00621-CV

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

_____

TOLL AUSTIN TX, LLC
*Appellant*

v.

BRENT DUSING AND ELIZABETH DUSING
*Appellees*

_____

On Appeal from the 353rd Judicial District Court
Travis County, Texas
Cause No. D-1-GN-16-002196

_____

**APPELLANT'S APPENDIX**
_____

Pursuant to Texas Rule of Appellate Procedure 38.1(k), the item listed below is contained in the Appendix:

Warranty Deed with Vendor's Lien

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM <u>ANY</u> INSTRUMENT <u>THAT TRANSFERS AN INTEREST IN REAL PROPERTY</u> BEFORE IT IS FILED ·FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

03-01247-34729-BOX- JW

### Warranty Deed with Vendor's Lien

Date:          February 2 , 2015

Grantor:     Brodney Pool and Kady Pool

Grantor's Mailing Address: _____

Grantee:     Brent William Dusing and Edith Dusing

Grantee's Mailing Address:   9607 Demona Cove
Austin, TX 78733

Consideration:     A Promissory Note in the original principal sum of Seven Hundred Twelve Thousand Five Hundred and No/100 Dollars ($712,500.00) payable to the order of Pioneer Bank, SSB ("Lender"), which Promissory Note is secured by a Deed of Trust of even date to Ruth W. Garner, Trustee.

The debt evidenced by said Note is in part payment of the purchase price of the Property. The debt is secured by a deed of trust and by a vendor's lien on the Property, which is expressly retained. The lien created by the deed of trust and the vendor's lien is transferred to Lender by this deed. The deed of trust does not waive the vendor's lien, and the two liens and the rights created by said deed of trust are cumulative. Lender may elect to foreclose under either of the liens without waiving the other or may foreclose under both.

Property (including any improvements):

     Lot 4, Block D, of AMENDED PLAT OF LOTS 1-13, BLOCK D, LOTS 1-13, BLOCK F, LOTS 1 & 2, BLOCK G, OF WERKENTHIN SECTION THREE, AND LOT 14, BLOCK F, OF WERKENTHIN SECTION FIVE, a subdivision in Travis County, Texas, according to the map or plat of record in Document Number 200000126, of the Official Public Records of Travis County, Texas.

Reservations from Conveyance:     None

GF#01247-34729-JW

Exceptions to Conveyance and Warranty:

Liens, if any, described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for the current year, which Grantee assumes and agrees to pay.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

Lender, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of Lender and are transferred to Lender without recourse against Grantor.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become absolute.

When the context requires, singular nouns and pronouns include the plural.


_____        _____
Brodney Pool                            Kady Pool

STATE OF TEXAS                                    )

COUNTY OF Travis                                  )


    This instrument was acknowledged before me February 3 , 2015, by Brodney Pool and Kady Pool.

JODIE WILKINSON
Notary Public, State of Texas
My Commission Expires
JULY 27, 2017

Notary Public, State of Texas


Grantee's Address/Return to:

9607 Jemona Cove
Austin, Tx 78733


GF#01247-34729-JW

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
February 04 2015 04:32 PM
FEE: $  34.00    2015017005